## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 25-cv-24834-BLOOM/Elfenbein

SHOIAB AHMED, MARINA HELENE
ASCHABER, CHARLIE BARD, SARAH
BARNES, KATHLEEN BERGET, HELEN
BEST-SHAW, JULIA VERA FOERSTER,
DANNY GHITIS, BENJAMIN GORGES,
MEGGAN HILL, DENNIS LITTLEY,
LAZY CAT ENTERPRISES LTD.,
MICHELLE MINNAAR, FLORIAN NOUH,
JUDY L. PURCELL, RENEE ROBLEY
SMITH, HEATHER SZUTKA, SARAH
TRENALONE, MARCO VERCH,
CANDICE WALKER, CHRISTINA CONTE
WARTINBEE, and WENDIE WILLIAMS,

      Plaintiffs,

v.

UBER TECHNOLOGIES, INC.,

      Defendant.

_____/

### ORDER ON PARTIAL MOTION TO DISMISS AND STRIKE

**THIS CAUSE** is before the Court upon Defendant Uber Technologies, Inc.'s

("Defendant") Partial Motion to Dismiss and Strike, ECF No. [15] ("Motion"). Plaintiffs filed a

Response in Opposition, ECF No. [27], to which Defendant filed a Reply, ECF No. [28].

Defendant also filed a Request for Judicial Notice, ECF No. [16], in support of its Motion. The

Court has reviewed Defendant's Motion, the briefs in support and opposition, the record, and is

otherwise advised of the premises. For the reasons that follow, Defendant's Motion is granted in

part and denied in part.

## I.      FACTUAL BACKGROUND

This case arises from a coalition of professionals whose photographic works (the "Photographs") were uploaded onto Defendant's servers and platforms. *See generally* ECF No. [1]. Each of the Photographs was "either created by, transferred to, or commissioned" by one of the photographers. *Id.* ¶ 29. Each photographer "is the author, copyright holder, or exclusive licensee of one or more of the Photographs." *Id.* ¶ 30. As a result of its perspective, orientation, positioning, lighting, and other details, each of the Photographs "is entirely original and creative." *Id.* ¶ 31. And each of the Photographs is a work of authorship protected under the Federal Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.* (the "Copyright Act"). *Id.* ¶ 32.

None of the photographers transferred ownership of copyright in the Photographs to any other person or entity, not did the photographers grant a license to Defendant to use the Photographs for any purpose. *Id*. ¶¶ 35, 36. Notwithstanding this, Defendant "copied, displayed, distributed and created derivative works of the Photographs on pages of the Defendant's website (the "Website")." *Id.* ¶ 37. Without license or authorization, Defendant accessed the Photographs, reproduced copies of the Photographs on its server, and displayed copies of the Photographs publicly on Defendant's Website. *Id.* ¶¶ 39, 40. Defendant further "displayed the Photographs internally to its employees, independent contractors, customers and vendors." *Id.* ¶ 41. After copying the Photographs, Defendant "made further copies and distributed the images on the internet to promote the sale of goods and services as part of Defendant's business." *Id.* ¶ 42. Defendant "copied and distributed the Photographs for purposes of advertising and promoting Defendant's business, and in the course and scope of advertising and selling its products and services." *Id.* ¶ 43.

On October 21, 2025, Plaintiffs filed the instant Complaint, asserting three causes of action against Defendant, all arising under 17 U.S.C. §§ 501 *et seq.*: (1) Direct Copyright Infringement; (2) Vicarious Copyright Infringement; and (3) Contributory Copyright Infringement. *Id.* at 10-12.[1] On December 12, 2025, Defendant filed its Motion, seeking to dismiss "(1) Plaintiffs' claim for vicarious copyright infringement; (2) Plaintiffs' claim for contributory copyright infringement; and (3) all claims based on photographs for which Plaintiffs fail to plead either a copyright registration or factual allegations sufficient to invoke the 'foreign works' exception under 17 U.S.C. § 411(a)." ECF No. [27] at 1. Defendant also moved, pursuant to Rule 12(f), to strike Plaintiffs' request for attorneys' fees and statutory damages relating to any foreign works. *Id.* Plaintiffs respond that the Complaint need only "allege facts that render their claims plausible," and Plaintiffs have done so. ECF No. [27] at 2. Moreover, Plaintiffs reassert that their request for statutory damages and attorneys' fees is proper. *Id.* at 16. Defendant replies by reasserting that the Complaint fails to state a claim and is rife with "critical deficiencies." ECF No. [28] at 1.

## II.     LEGAL STANDARD

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

---

[1] Attached to the Complaint is Plaintiffs' Exhibit 1, a spreadsheet listing, *inter alia*, each Plaintiff's name, the title of their Photograph, a link to the page on which Defendant displayed an unauthorized copy of the Photograph, and a link reflecting where the unauthorized copy of the Photograph was stored by Defendant. *Id.* ¶ 28. Exhibit 1 also lists the Certificate of Registration number for works that have been registered with the U.S. Copyright Office; those works which do not list such certificate number are identified in the Complaint as foreign works falling under 17 U.S.C. § 411(a). *Id.* ¶¶ 28, 34.

Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted). In considering a motion to dismiss, the court is generally limited to the facts contained in the complaint and attached exhibits. *See Thaeter*, 449 F.3d at 1352. However, pursuant to the incorporation by reference doctrine, "a district court may

consider evidence attached to a motion to dismiss without converting the motion into a motion for summary judgment 'if the document is (1) central to the plaintiff's claim; and (2) undisputed, meaning that its authenticity is not challenged.'" *Swinford v. Santos*, 121 F. 4th 179, 187 (11th Cir. 2024) (quoting *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024)).

Pursuant to Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "[A] motion to strike is the appropriate mechanism to pursue removal of the prayer for damages in the Complaint." *Pucci v. Carnival Corp.*, 160 F. Supp. 3d 1329, 1331 (S.D. Fla. 2016). "Under Rule 12(f), a motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Laferte v. Murphy Painters, Inc.*, No. 17-CIV-60376, 2017 WL 2537259, at *1 (S.D. Fla. June 12, 2017) (collecting cases). Thus, despite the Court's broad discretion, a motion to strike is considered a drastic remedy and is often disfavored. *Id.*

## III.   DISCUSSION

### A.  Vicarious Copyright Infringement

As a general matter, to state a claim for direct copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L.Ed.2d 358 (1991); *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008). To state a claim for vicarious infringement, therefore, a plaintiff must allege "direct infringement by a third party." *See Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016). From there, a plaintiff must allege that a defendant has (1) the "right and ability to supervise the [third party's] infringing activity" and (2) "a direct financial interest [in the third party's infringing

activity]." *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1214 (S.D. Fla. 2021) (citation omitted), *amended in part on reconsideration*, No. 21-20862, 2022 WL 845468 (S.D. Fla. Mar. 22, 2022); *see also Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987). So long as these two elements are alleged, vicarious infringement can be shown "even if the defendant initially lacks knowledge of the infringement.'" *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007) (quoting *Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 n.9 (2005)). Whether the direct infringer is an employee or an independent contractor is irrelevant to the vicarious liability inquiry. *S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985) (imposing vicarious liability for an independent contractor's copyright infringement); *see also UMG Recordings, Inc. v. Bright House Networks*, LLC, No. 19-CV-710, 2020 WL 3957675, at *3 (M.D. Fla. July 8, 2020) ("The doctrine [of vicarious infringement] subsequently expanded to cover independent-contractor relationships as well.").

Defendant first argues that Plaintiffs' claim for vicarious liability should be dismissed for failure to state a claim. ECF No. [15] at 5. Specifically, Defendant contends that Plaintiffs fail to sufficiently allege either element. *Id.* at 6. As to the first element—whether Defendant had the right and ability to supervise the infringing activity—Defendant argues that "Plaintiffs do not explain in what capacity or how [Defendant] would or could practically do so." *Id.* at 7–8. As to the second element, Defendant argues that the Complaint fails to allege what, precisely, Defendant's financial interest is in the alleged infringing activities. *Id.* at 8. Fundamentally, Defendant argues that, rather than alleging actual *facts* in support of either element, "Plaintiffs merely parrot the elements of a vicarious infringement claim." *Id.*

Defendant also argues that amendment would be futile. *Id*. The Uber Eats platform, Defendant says, hosts "over 1.5 million independent merchants across more than 11,000 cities and six continents." *Id*. All those merchants "manage their own storefronts." *Id*. As a result of this structure, as a matter of law, "Plaintiffs cannot plausibly allege Uber has the practicable ability to supervise, approve, or pre-screen merchant uploaded imagery across global markets." *Id*. (collecting cases). Because Defendant's "right and ability to supervise" and protect against infringement on its platforms is "essentially impossible," amendment would be futile. *Id*. (citations omitted).

Plaintiffs respond, first, that they have adequately alleged Defendant's right and ability to supervise. ECF No. [27] at 7. They argue that their allegations "are not mere legal conclusions." *Id*. Instead, they are "factual allegations that, accepted as true, establish [Defendant]'s supervisory authority over the very platform where the infringement occurred." *Id*. The Complaint, Plaintiffs assert, clearly alleges that Defendant owns and operates the platform where the infringement occurred. *Id*. Plaintiffs point to Defendant's "publicly available policies," which they say confirm the supervisory control alleged in the complaint. *Id.* at 8. For instance, they point to parts of Defendant's own policies which indicate that Defendant "actively reviews merchant-submitted photos and user-submitted photos internally before they are displayed on the platform." *Id*. Plaintiffs argue that, having chosen to implement a content review system, Defendant "cannot now claim it lacks the ability to supervise the content it reviews." *Id*. at 9. Ultimately, Plaintiffs argue that what matters is "whether the defendant has the contractual and practical ability to control the infringing conduct, and Uber does; merchant numerosity is irrelevant." *Id.* at 11.

Plaintiffs contend that they have alleged Defendant's direct financial interest. *Id*. Specifically, they contend that, having explained that the Photographs were used for advertising

and sales purposes, their allegations are sufficient at the pleading stage. *Id*. Plaintiffs allege that Defendant's "business model confirms the financial interest alleged in the Complaint." *Id*. Defendant charges merchants fees for using its platform, including fees based on orders made through the platform. Photographs like those at issue here "are essential to driving customer orders; they are the primary means by which customers evaluate menu items before purchasing." *Id*. Plaintiffs reject that they must show that the Photographs were the "main customer draw." *Id*. (citation omitted). Instead, they argue that "a direct financial interest exists where the defendant derives a financial benefit from the infringing activity," and their Complaint alleges exactly that. *Id.* at 12.

Defendant replies, first, that Plaintiffs failed to properly allege that Defendant had the right and ability to supervise and control the infringing activity. ECF No. [28] at 2. Defendant argues that Plaintiffs mischaracterize their Complaint. *Id*. For instance, they frame "legal conclusions" as "factual allegations," and they make allegations that were not actually in their Complaint, including allegations about "hosting or promotion" and Defendant's ability to "prescreen or monitor millions of merchant-uploaded images for copyright compliance." *Id*.

Defendant also replies that Plaintiffs' attempt to rely on "extraneous evidence"—such as Defendant's content review policies—is not permitted. *Id.* at 3 (citation omitted). Even if the Court were to consider these materials, Defendant contends that Plaintiffs' allegations would still be insufficient. For instance, Plaintiffs' alleged evidence of Defendant's "general review process for merchant-uploaded photos" does not establish a "practical ability" to supervise or control, as this evidence does not show that *copyright* review occurs or would be practically feasible. *Id.* at 3–4.

Finally, Defendant reiterates that amendment would be futile given that Plaintiffs could not plausibly allege any factual detail that Defendant has the practical ability to supervise 1.5 million merchants across 11,000 cities and six continents. *Id.* at 4–5.

### i.     Supervision and Control

The Court finds that Plaintiffs have failed to state a claim for vicarious liability for two reasons. First, Plaintiffs have failed to plausibly allege that, in practical terms, Defendant had "the ability to supervise the direct infringer." *BUC Int'l*, 489 F.3d at 1138 n.19. That is, Plaintiffs were required to allege that Defendant had "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Venus Fashions, Inc. v. ContextLogic, Inc.*, No. 16-CV-907, 2017 WL 2901695, at *12 (M.D. Fla. Jan. 17, 2017). The Complaint's *sole* statement regarding Defendant's ability to supervise or control infringing activities in the context of their vicarious infringement claim is as follows: "At all relevant times, Defendant had the right and ability to supervise the infringing activities of Defendant's employees, independent contractors, customers, vendors and other third-parties." ECF No. [1] ¶ 58. This is a mere "formulaic recitation" of the elements, *Twombly*, 550 U.S. at 545, and it gives the Court no tangible indication of whether or how supervision or control were actually exercised.

If the vicarious liability claim was limited to employees operating within the scope of their employment and independent contractors operating similarly, the Court would understand without difficulty how such control was exercised, as "[v]icarious copyright infringement liability is an outgrowth of *respondeat superior*," *Coach Inc. v. Kim's Mgmt., Inc.*, No. 1:10-CV-02746-JJOF, 2012 WL 13001933, at *11 (N.D. Ga. Feb. 28, 2012), and it has been extended to independent contractor relationships. *Bright House Networks, LLC*, 2020 WL 3957675, at *3. But the Complaint implicates "customers, vendors and other third parties," and it is entirely unclear from

9

the Complaint how Defendant exercises supervision or control over these parties. Indeed, Plaintiffs' Response, ECF No. [28] at 8, focuses on alleged infringing activities by *merchants*, but the Complaint provides no indication of how Defendant would or could exercise supervision or control over merchants.

Plaintiffs attempt to remedy their pleading deficiencies by pointing to Defendant's policies in their Response, which they allege show Defendant's practice of reviewing photographs posted on their platform. ECF No. [27] at 8. But it is well-established that a plaintiff cannot amend a complaint through arguments made in response to a motion to dismiss. *Brannen v. United States*, No. 4:11-CV-0135-HLM, 2011 WL 8245026, at *5 (N.D. Ga. Aug. 26, 2011), *aff'd sub nom., Jesse E. Brannen, III, P.C. v. United States*, 682 F.3d 1316 (11th Cir. 2012). Similarly, a party cannot amend a complaint by attaching documents to a response to motion to dismiss. *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). In general, the Complaint must be sufficient to state a claim on its own—along with any documents incorporated into it by reference—and here, the Complaint is utterly devoid of any allegations regarding how Defendant would exercise the requisite supervision or control. To the extent the Complaint alleges that a party may have been the one to commit the direct infringement, the Complaint needed to allege that Defendant would have had the right and ability to supervise and control that party.

### ii. Direct Financial Interest

Similarly, the Court finds that Plaintiffs have failed to show Defendant's direct financial interest in the infringing activity. The Complaint states that "Defendant had a direct financial interest in the infringing activities [and] . . . benefitted financially from the infringement." ECF No. [1] ¶ 59. The only explanation in the Complaint of precisely how this financial interest worked is Plaintiffs' allegation that "Defendant copied and distributed the Photographs for purposes of

advertising and promoting Defendant's business, and in the course and scope of advertising and selling its products and services." *Id.* ¶ 43.T Those allegations are insufficient.

To allege a direct financial interest, Plaintiffs must allege that Defendant profited directly from the infringing activity. *Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1282 (S.D. Fla. 2012); *BUC Int'l Corp.*, 489 F.3d at 1138 n.19. Importantly, it is not enough to show that the infringing activity "generally benefited" Defendant; Plaintiffs must allege a "causal relationship" between the infringing activity and a financial benefit—that Defendant "made a[] profit from the infringing material." *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, 707 F. Supp. 2d 1287, 1297 (M.D. Fla. 2010), *aff'd*, 425 F. App'x 833 (11th Cir. 2011). For instance, in *Coach, Inc.*, the court found that the operators of a flea market directly financially benefited from the infringing activity of vendors because they received rent from the vendors committing the infringement. 916 F. Supp. 2d at 1282. By contrast, in *Payne v. Essential Media Group LLC*, the court found that the plaintiff had failed to state a claim for vicarious infringement because the plaintiff did not include "specific allegations describing the nature of this financial interest and each Defendant's specific role in the alleged infringement arrangement." No. 24-CV-21119-RAR, 2024 WL 2880727, at *4 (S.D. Fla. June 8, 2024).

Here, Plaintiffs have failed to sufficiently allege a direct financial interest. Though they allege the Photographs were part of Defendant's advertising and promotion strategy, they fail to allege anything beyond a theoretical general benefit. And, again, Plaintiffs' attempt to rectify this failing in their Response is unavailing. Plaintiffs raise the following allegation in their Response:

> [Defendant] charges merchants fees for using its platform, including fees based on orders placed through the platform. High-quality food photographs, precisely the type that Plaintiffs create[], are essential to driving customer orders; they are the primary means by which customers evaluate menu items before purchasing.

Case No. 25-cv-24834-BLOOM/Elfenbein

ECF No. [27] at 11. But no allegations of this sort exist in the Complaint, and "a plaintiff cannot amend his complaint through a response to a motion to dismiss." *Balbin v. Johnson*, No. 22-11182, 2025 WL 883064, at *3 (11th Cir. Mar. 19, 2025) (citations omitted).[2]

Thus, for these two reasons, Plaintiffs' claim for vicarious copyright infringement is dismissed.

## B. Contributory Copyright Infringement

To state a claim for contributory copyright infringement, a plaintiff must allege two elements: (i) direct infringement and (ii) intentional inducement or encouragement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, Ltd., 545 U.S. 913, 930 (2005); *Cable/Home Commc'n Corp. v. Network Producs., Inc.*, 902 F.2d 829, 842–47 (11th Cir. 1990). The second element is also phrased as an allegation that the defendant "induces, causes, or materially contributes to the infringing conduct of another." *Marketran, LLC v. Brooklyn Water Enters., Inc.*, No. 16-CV-81019, 2017 WL 1292983, at *2 (S.D. Fla. Jan. 31, 2017) (citing *Cable/Home*, 902 F.2d at 845).

Importantly, to allege intentional inducement, a plaintiff must plead that the defendant is "one who, with *knowledge* of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Cable/Home*, 902 F.2d at 845 (quoting *Casella*, 820 F.2d at 265) (emphasis added). Knowledge in this context is objective; a plaintiff must present plausible

---

[2] Notwithstanding Defendant's argument to this effect, there is no binding Eleventh Circuit precedent requiring a plaintiff to allege that the infringing activity was the "main customer 'draw'" to its services. ECF No. [15] at 6. Apart from *Bright House Networks*, the vast majority of cases in this circuit require only that the plaintiff allege a "direct financial interest." *See, e.g.*, *Diaz v. Edi Korta, LLC*, No. 24-CV-20522, 2024 WL 3425710, at *12 (S.D. Fla. July 15, 2024), *report and recommendation adopted sub nom. Baloa Diaz v. Edi Korta*, LLC, No. 1:24-CV-20522, 2024 WL 3636641 (S.D. Fla. Aug. 2, 2024); *Venus Fashions, Inc. v. ContextLogic, Inc.*, No. 3:16-CV-907-J-39MCR, 2017 WL 2901695, at *24 (M.D. Fla. Jan. 17, 2017); *Michael Grecco Prods., Inc. v. RGB Ventures, LLC*, No. 3:16-CV-1335-J-34PDB, 2017 WL 4077045, at *9 (M.D. Fla. Sept. 14, 2017); *Payne*, 2024 WL 2880727, at *4; *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1214 (S.D. Fla. 2021), *amended on reconsideration in part*, No. 21-CV-20862, 2022 WL 845468 (S.D. Fla. Mar. 22, 2022); *Coach, Inc.*, 916 F. Supp. 2d at 1282; *Klein & Heuchan, Inc.*, 707 F. Supp. 2d at 1298–99.

facts showing the defendant knew or had reason to know of the infringing activity. *See Cable/Home*, 902 F.2d at 845. A plaintiff can meet this knowledge standard by describing "a defendant taking affirmative steps to encourage direct infringement, such as advertising an infringing use or instructing on how to engage in an infringing use." *Microsoft Corp. v. Guirguis*, No. 20-CV-24514, 2022 WL 1664181, at *3 (S.D. Fla. Mar. 30, 2022) (citing *Metro-Goldwyn-Mayer*, 545 U.S. at 936).

Defendant argues that Plaintiffs' contributory copyright infringement claim is similarly based on conclusory allegations and therefore should be dismissed. ECF No. [15] at 10. Specifically, Defendant argues that:

> Plaintiffs fail to plead *any* facts describing what [Defendant] did or how those actions amount to intentional inducement or encouragement, or materially contributed to a third party's infringement—no instructions, advertising, tools, or functionality directed to infringing use; no knowledge as to any specific third-party infringement; and no facts showing material contribution as opposed to the mere operation of a website.

*Id.* at 11. Instead, Plaintiffs engage in "formulaic recitations and conclusory assertions," which are insufficient. *Id.* at 12.

Plaintiffs respond that their allegations are "supported by factual context established elsewhere in the Complaint." ECF No. [27] at 13. Knowledge is alleged through Plaintiffs' statement that Defendant "operates a platform designed to display photographs to promote [Defendant]'s sales." *Id*. That is, Defendant knew that photographs were being displayed on its platform. *Id*. Plaintiffs assert the Court can reasonably infer from its alleged facts that Defendant "knew or should have known that some of these professional-quality photographs might infringe third-party copyrights, particularly where the photographs were plainly not taken by the merchants themselves." *Id*.

As to Defendant's material contribution, Plaintiffs contend that "[w]ithout [Defendant]'s platform, servers, and display capabilities, the infringing displays alleged in the Complaint would not have occurred." *Id*. Beyond merely providing a platform, the Complaint alleges that Defendant "actively used the infringing works for its own commercial benefit." *Id*. Fundamentally, Defendant "owns and operates the platform where the infringement occurs, reviews and approves content before display, and uses the infringing images to promote its own business." *Id.* at 14. That is enough to allege intentional inducement. *Id*.

Defendant replies that Plaintiffs have conceded the absence of facts showing knowledge, thereby undermining their claim of contributory infringement. ECF No. [28] at 7. That is, Plaintiffs ask the Court to infer Defendant's knowledge, "not from pleaded facts, but from pure speculation." *Id*. Plaintiffs' position "would require [Defendant] to inspect each photograph, somehow determine that the photographs were taken by a 'professional' (presumably based on photograph quality), and then suspect any such merchant who uploads such a photograph of copyright infringement." *Id.* at 7–8. Plaintiffs' theory would "further require [Defendant] to know whether those merchants owned or licensed the copyrighted material." *Id.* at 8. Those are unreasonable assumptions, so Defendant argues the Court should find Plaintiffs have failed to plead knowledge. *Id*.

### iii.    Knowledge

The Court finds that Plaintiffs have failed to state a claim for contributory copyright inducement for two reasons. First, Plaintiffs have failed to allege Defendant's knowledge. In their Complaint, Plaintiffs allege that Defendant "knew or reasonably should have known of the copyright infringement." ECF No. [1] ¶ 67. That conclusory statement goes unsupported by any factual allegations. No doubt, Plaintiffs allege that Defendant knew the Photographs were on its

platform; indeed, Plaintiffs allege that the Photographs were there for purposes of advertisement and promotion of Defendant's services. ECF No. [1] ¶¶ 42, 43. But Plaintiffs provide no factual allegation that, on its own or by reasonable inference, supports the conclusion that Defendant knew or had reason to know of the infringing conduct.

Plaintiffs essentially argue that with so many high-quality pictures being uploaded onto its platform, Defendant should have suspected that some of the Photographs were copyright-protected. It is true that willful blindness—which occurs when a person "suspect[s] wrongdoing and deliberately fail[s] to investigate"—is one way to show that a defendant had constructive knowledge in contributory infringement cases. *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1312–13 (11th Cir. 2019) (quoting *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992)). But Plaintiffs' Complaint does not allege how Defendant knew or should have known of the infringing conduct occurring on their platform. It is only in their Response that they raise this allegation and the associated inference. The Complaint fails to allege any fact regarding Defendant reviewing the Photographs before they are uploaded, such that Defendant would even have a chance to assess their origins.

Nor would it be enough if Plaintiffs had made those allegations. The mere fact that many images are uploaded onto Defendant's platform and that some portion of them appear to be high-quality does not give rise to an inference that Defendant knew or had reason to know of copyright infringement. Plaintiffs ask the Court to pile inference upon inference. First, the Court should infer that, because Defendant "reviews" merchant- or customer-uploaded content in some manner, it reviews each individual photograph in depth. Second, the Court should infer that, if Defendant reviews each individual photograph in depth, it should be able to determine that the high-quality photographs were taken by a professional. And third, the Court should infer that, because the

15

photographs appear professional, Defendant should suspect copyright infringement by the merchant or customer that uploaded it. The stacked inferences are too attenuated to show knowledge. *See Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 964 (2026) ("a company is not liable as a copyright infringer for merely providing a service to the general public with knowledge that it will be used by some to infringe copyrights.").

### iv.   Intentional Inducement or Encouragement

Even if Plaintiffs had alleged sufficient knowledge, they would still fail to state a claim for contributory infringement because they have failed to allege that Defendant either "affirmatively induced the infringement" or "sold a service tailored to infringement." *Cox Commc'ns, Inc.*, 146 S. Ct. 959, 964 (2026) (cleaned up and citations omitted). A service provider "induces infringement if it actively encourages infringement through specific acts." *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring). A service is tailored to infringement if it is "not capable of 'substantial' or 'commercially significant' noninfringing uses." *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring) (quoting *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984)).

Here, Plaintiffs have not provided allegations supporting either version of intent. Plaintiffs allege that "Defendant induced, caused, and/or materially contributed to infringing conduct . . . by facilitating and using the Works on the Website to promote Defendant's business despite" knowing of the infringement. ECF No. [1] ¶ 68. There is no allegation of how Defendant "facilitated" the use of copyright-protected works. *Diaz v. Edi Korta*, LLC, No. 24-CV-20522, 2024 WL 3425710, at *10 (S.D. Fla. July 15, 2024), *report and recommendation adopted sub nom. Baloa Diaz v. Edi Korta, LLC*, No. 1:24-CV-20522, 2024 WL 3636641 (S.D. Fla. Aug. 2, 2024) ("A mere allegation that the defendant provided the third party with the opportunity to engage in wrongful conduct is

insufficient to survive a motion to dismiss." (quoting *Bus. Casual Holdings, LLC v. YouTube*, LLC, No. 21-CV-3610, 2022 WL 837596, at *5 (S.D.N.Y. Mar. 21, 2022))).

Fundamentally, there is no allegation that Defendant intended for its platform to be used to commit copyright infringement. Plaintiffs do not allege any manner in which Defendant "induced" or "encouraged" merchants, customers, or other third parties to infringe. *Grokster*, 545 U.S. at 930. Plaintiffs have not alleged "evidence of express promotion, marketing, and intent to promote" infringement. *Id.* at 926. Similarly, Plaintiffs do not allege that Defendant provided a service tailored for infringement, as Defendant's platform was clearly "capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* at 942 (Ginsburg, J., concurring). Even if Plaintiffs had alleged "insufficient action to prevent [infringement]," the Supreme Court has expressly stated that this would be insufficient to establish contributory liability. *Cox Commc'ns, Inc.*, 146 S. Ct. at 969 (citations omitted).

Thus, Plaintiffs' claim for contributory copyright infringement is dismissed.

### C. "Foreign" Works Exemption

As a precondition to enforcement, the Copyright Act generally requires that copyright holders of United States works register those works before bringing an infringement action. 17 U.S.C. 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) (citing section 411(a)). By contrast, owners of "foreign works" need not register their works before instituting an infringement action. *Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1302 (11th Cir. 2012). The Eleventh Circuit has indicated as follows:

> [T]o proceed with a copyright infringement action, a plaintiff that claims his published work is exempt from the registration requirement must prove that the first publication occurred abroad. This requires the plaintiff to first prove a publication: that the method, extent, and purpose of the distribution meets the Copyright Act's requirements for publication. Once the plaintiff has proven publication, he must then prove that the publication was, in fact, the first

publication, and that the geographic extent of this first publication diverges from the statutory definition of a "United States work."

*Id.* at 1304–1305.

Defendant alleges that Plaintiffs' pleading does not plausibly allege that the work is not a "United States" work. ECF No. [15] at 12–13. The Complaint, Defendant points out, "says nothing about how or where the works were first published such that [Defendant]—or the Court—can determine whether the works are properly exempt." *Id.* at 14.

Plaintiffs respond that their allegations are sufficient at the pleading stage. ECF No. [27] at 14. A plaintiff is only required to "plead facts that make the claim plausible, not prove every element of the claim." *Id*. Here, the Complaint identified several Plaintiffs who reside outside of the United States. *Id*. This permits a reasonable inference that their works were first published outside the United States. *Id.* at 15. Whether Plaintiffs' allegations of "foreign works" status "can be proven is a question for discovery, not a motion to dismiss." *Id.* at 16.

Defendant replies that Plaintiffs "have not pleaded when, where, or how their allegedly foreign works were first published—facts that are essential to invoking the foreign works exception." ECF No. [28] at 8. The fact that certain photographers reside abroad does not indicate location of publication. *Id.* at 9. Fundamentally, Plaintiffs "lack standing to assert copyright infringement as to any allegedly 'foreign works' that are actually United States works and are not registered." *Id*.

The Court has located no cases within the Eleventh Circuit interpreting the holding in *Kernel Records* to require that, at the pleading stage, a plaintiff "plausibly allege" that the first publication occurred abroad. For that matter, the Court has found no case to the contrary. As such, the Court turns to cases outside of this Circuit.

In *DigitAlb, Sh.a v. Setplex, LLC*, the Southern District of New York indicated that, should a plaintiff "seek to rely on the § 411 registration exemption, it must allege that the works are not United States works within the meaning of § 101." 284 F. Supp. 3d 547, 555 (S.D.N.Y. 2018). The court found allegations that the plaintiff had "published those works outside of the United States" insufficient, because they did not "identify where or when the programming was *first* published." *Id*. Similarly, in Cong v. Zhao, the Western District of Washington indicated that to plead that a work is exempt from the registration requirement, the non-U.S. citizen plaintiff must allege that "(a) the original work remains unpublished, or (b) that the work was first published outside of the United States." No. 2:21-CV-01703-TL, 2024 WL 3091187, at *4 (W.D. Wash. June 21, 2024). And in *Pryimachenko v. Home Box Office, Inc.*, the Southern District of New York dismissed infringement claims because the plaintiff "does not sufficiently plead facts demonstrating" where the work was first published. No. 23-CV-10034 (LAK) (RWL), 2025 WL 567988, at *5 (S.D.N.Y. Jan. 14, 2025), *report and recommendation adopted*, No. 23-CV-10034 (LAK), 2025 WL 673473 (S.D.N.Y. Mar. 3, 2025).

Those cases indicate that some factual content is required at the pleading stage to plausibly allege that a work is an exempt "foreign work." And to survive a motion to dismiss, a plaintiff must "give enough factual content for a court to infer that a claim exists." *Martin v. Delta Airlines*, No. 1:17-CV-0745-SCJ, 2017 WL 8186860, at *5 (N.D. Ga. Nov. 21, 2017) (citing *Twombly*, 550 U.S. at 570). The Court cannot assess whether  a work is an exempt foreign work without factual allegations regarding its first publication.

Applying that pleading standard here, it is clear that Plaintiffs cannot be allowed to proceed with respect to their purportedly "foreign works." Plaintiffs merely allege that those Photographs for which no Certificate of Registration is provided "are foreign works exempt from the

registration requirement pursuant to 17 U.S.C. § 411(a)." ECF No. [1] ¶ 34. That allegation is insufficient, and merely indicating the photographers' countries of residence does nothing to rectify the inadequacy. There is simply no indication in the Complaint of the place of first publication of these foreign works. As such, the Complaint will be dismissed with respect to these purported "foreign works."

### D. Attorneys' Fees and Statutory Damages for Unregistered Works

Pursuant to 17 U.S.C. § 412, only owners of registered works may collect statutory damages and attorneys' fees. Courts that have assessed the issue have determined that § 412 precludes unregistered foreign works from seeking statutory damages or attorneys' fees. *See, e.g.*, *The Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 633 F. Supp. 2d 159, 162 (S.D.N.Y. 2009) ("Section 412 has no exception excusing foreign works from its mandate: it requires registration to obtain statutory damages for both domestic and foreign works." (citations omitted)); *Parry v. URBN US Retail LLC*, 809 F. Supp. 3d 255, 270 (E.D. Pa. 2025) ("A review of the legislative history reveals that Congress intended Section 412 to be applicable to 'works of foreign and domestic [origin] alike.'") (citations omitted)); *Super Express USA Publ'g Corp. v. Spring Publ'g Corp.*, No. 13-CV-2814 (DLI)(JO), 2018 WL 1559764, at *3 (E.D.N.Y. Mar. 30, 2018) ("[U]nregistered foreign copyright holders can bring infringement claims, but they may only seek actual damages." (citations omitted)).

Defendant argues that Plaintiffs may not seek statutory damages and attorneys' fees for its purported "foreign works." ECF No. [15] at 15. "Those demands are legally unavailable, and courts routinely strike such requests at the pleading state to narrow discovery and streamline case management." *Id*.

Plaintiffs respond that "the availability of these remedies is a fact-bound inquiry." ECF No. [27] at 16. To strike those requests now would involve the Court making "premature factual determinations regarding the timing of publication and the commencement of infringement." *Id*. Moreover, striking the requests, Plaintiffs argue, "would be prejudicial to Plaintiffs and ignores judicial economy." *Id*. at 17. That is because discovery may reveal that certain works qualify for statutory damages and attorneys' fees, at which point Plaintiffs would be forced to amend their Complaint to add the prayer for relief back. *Id.* Finally, Plaintiffs argue that whether a prayer for relief is available is not "immaterial" or "impertinent" under Rule 12(f). *Id*.

Here, because the Court has dismissed the claims relating to purportedly "foreign works," Defendant's Motion to Strike the associated prayers for relief is denied as moot.

## IV.    AMENDMENT

"A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). Even if a plaintiff requests leave to amend in a response, the Eleventh Circuit has held that this request "possesse[s] no legal effect." *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018). The court is "free to dismiss [Plaintiffs'] complaint with prejudice" on that basis alone without determining whether further amendment is futile, unless dismissal is based on shotgun pleading grounds. *See Pop v. LuliFama.com, LLC*, 145 F.4th 1284, 1297-98 (11th Cir. 2025).

That said, district courts "have broad discretion in permitting or refusing to grant leave to amend." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Where a court opts to undertake a futility analysis, the law of

this circuit is clear that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004). "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999). A futility analysis operates in substantially the same way as an analysis of a motion to dismiss. That is, if an amended complaint would still be "properly dismissed or be immediately subject to summary judgment for the defendant," a district court could determine that leave to amend the complaint is futile. *Rivas v. Bank of N.Y. Mellon*, 777 F. App'x 958, 965 (11th Cir. 2019) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) (amendment is futile if cause of action asserted therein could not withstand motion to dismiss); *Amick v. BM & KM, Inc.*, 275 F. Supp.2d 1378, 1381 (N.D. Ga. 2003) ("In the Eleventh Circuit, a proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss.").

Here, Plaintiffs have requested leave to amend. ECF No. [27] at 17–18. They allege that they "can provide additional factual detail regarding the specific third-party conduct at issue, Uber's knowledge and control, and the publication history of the foreign works." *Id.* at 18.

Defendant argues that any amendment of Plaintiffs' vicarious copyright infringement claim would be futile, as Defendant's platform has "over 1.5 million independent merchants across more than 11,000 cities and six continents," each of whom "manage[s] their own storefronts." ECF No. [15] at 8.[3] Defendant's "right and ability to supervise" and protect against infringement is

---

[3] Defendant asks the Court to take judicial notice of a webpage on its website titled "Smarter Tools for Restaurants to Help Them Thrive." ECF No. [16]. Defendant argues that because its platform hosts "over

essentially impossible, "particularly given the number of merchants" on the platform. *Id*. at 10. As such, amendment would be futile, and dismissal should operate with prejudice. *Id*.

While Plaintiffs have not filed a motion to amend and the deadline for amending pleadings has passed, *see* ECF No. [24], the Court undertakes a futility analysis and finds that amendment would be futile with respect to Plaintiffs' vicarious infringement and contributory infringement claims, but not with respect to Plaintiffs' claims regarding purported "foreign works."

With respect to vicarious liability—and Defendant's "direct financial interest" in particular—Plaintiffs have merely indicated in their Response that "[h]igh-quality food photographs . . . are essential to driving customer orders" and are "the primary means by which customers evaluate items before purchasing." ECF No. [27] at 11. That attenuated link between photographs, sales, and financial benefit to Defendant is far too speculative to support Plaintiffs' argument that the Photographs constitute a meaningful "draw." *Oppenheimer v. MiJoy Indus. Servs., Inc.*, No. 1:22-CV-04776-JPB, 2025 WL 2995125, at *7 (N.D. Ga. Mar. 13, 2025). That allegation, even if asserted in an amended complaint, would be insufficient to survive a motion to dismiss. As such, the Court finds that any amendment of Plaintiffs' vicarious infringement claim would be futile.

---

1.5 million independent merchants across more than 11,000 cities and six continents," as a matter of law, they lack the practical ability to supervise or protect against copyright infringing activity. ECF No. [15] at 8.

A court may take judicial notice of adjudicative facts, provided they are "either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Defendant's webpage, which purports to establish its number of users, is not the sort of source "whose accuracy cannot reasonably be questioned." *Id*. As such, the Court declines to take judicial notice of it. *See Lodge v. Kondaur Cap. Corp.*, 750 F.3d 1263, 1273 (11th Cir. 2014) (concluding that the court "did not abuse its discretion in declining to take judicial notice of the contents of the defendants' websites"); *Nassar v. Nassar*, No. 3:14–cv– 1501–J–34MCR, 2017 WL 26859, at *5 (M.D. Fla. Jan. 3, 2017) ("In general, non-governmental websites are not proper subjects of judicial notice.").

The same is true with respect to Plaintiffs' contributory liability claim. Plaintiffs' only argument regarding Defendant's knowledge of infringing activity is, in effect, that Defendant *should have* suspected infringement based on the quality of the photographs. As discussed above, that allegation, asserted in an amended complaint, would still be insufficient as a matter of law to show knowledge. Similarly, there is no dispute that Defendant's platform is "capable of 'substantial' or 'commercially significant' noninfringing uses." *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring) (quoting *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984)). And notwithstanding Plaintiffs' bald assertion that Defendant went "beyond providing a platform," ECF No. [27] at 13, Plaintiffs have provided no indication that they could amend their complaint to sufficiently allege that Defendant did anything other than provide a platform—that is, the Court sees no indication that Plaintiffs could meaningfully allege that Defendant "actively encourages infringement through specific acts." *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring); *Bus. Casual Holdings, LLC*, 2022 WL 837596, at *5 ("A mere allegation that the defendant provided the third party with the opportunity to engage in wrongful conduct is insufficient to survive a motion to dismiss." (quotation omitted)). Thus, any amended complaint including a contributory infringement claim would fail as to intent.

However, as to Plaintiffs' purportedly foreign works, Plaintiffs allege that "[t]he details of when and where each photograph was first published are within Plaintiffs' knowledge, and Plaintiffs can provide such information through . . . an amended complaint." ECF No. [27] at 16. Thus, the Court cannot say that amendment would be futile as to claims involving Plaintiffs' purported foreign works. The Court grants Plaintiffs an opportunity to amend so that they can cure this deficiency.

24

IV.    **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.  Defendant's Motion to Dismiss, **ECF No. [15]**, is **GRANTED IN PART** and **DENIED IN PART**.

2.  Plaintiffs' Second Cause of Action (Vicarious Copyright Infringement – 17 U.S.C. §§ 501 *et seq.*) and Third Cause of Action (Contributory Copyright Infringement – 17 U.S.C. §§ 501 *et seq.*), **ECF No. [1]**, are **DISMISSED WITH PREJUDICE**.

3.  Plaintiffs' claims regarding infringement of "foreign works" are **DISMISSED WITHOUT PREJUDICE**.

4.  Plaintiff is granted leave to file an Amended Complaint consistent with this Order **no later than May 7, 2026**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 24, 2026.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record