**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MARINA HELENE ASCHABER, CHARLIE BARD, SARAH BARNES, KATHLEEN BERGET, HELEN BEST-SHAW, JULIA VERA FOERSTER, DANNY GHITIS, BENJAMIN GORGES, MEGGAN HILL, DENNIS LITTLEY, LAZY CAT ENTERPRISES LTD., MICHELLE MINNAAR, FLORIAN NOUH, JUDY L. PURCELL, RENEE ROBLEY SMITH, HEATHER SZUTKA, SARAH TRENALONE, MARCO VERCH, CANDICE WALKER, CHRISTINA CONTE WARTINBEE, AND WENDIE WILLIAMS,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC.,

Defendant.

CIVIL ACTION NO. 1:25-cv-24834-BB

**PARTIAL MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT**

Defendant Uber Technologies, Inc. ("Uber"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), respectfully moves to dismiss, and in the alternative to strike, portions of Plaintiffs' Second Amended Complaint, ECF 53 (the "SAC"). The Court previously dismissed Count III (contributory infringement) with prejudice, and the SAC repleads only direct infringement (Count I) and vicarious infringement (Count II). Uber therefore seeks dismissal with prejudice of Count II; dismissal of all claims to the extent they are based on unregistered works for which the SAC pleads neither a copyright registration nor facts bringing the work within the 17 U.S.C. § 411(a) exception; and an order striking the SAC's requests for statutory damages and attorneys' fees to the extent they concern unregistered works.

## I. INTRODUCTION

This is Plaintiffs' third pleading and their second attempt to state a vicarious infringement claim. The Court has now twice explained what Plaintiffs' prior pleading was missing. In April, the Court dismissed Count II because the Complaint offered only a "formulaic recitation" on supervision and control and nothing "beyond a theoretical general benefit" on financial interest. ECF 34 at 9-11. In August, on reconsideration, the Court left the first holding fully intact, thereby rejecting Plaintiffs' claim that the ruling turned on the scale of Uber's platform and confirming that it rested on "Plaintiff's failure to offer any non-conclusory allegations relating to Defendant's supervisory control." ECF 52 at 4-5. The Court likewise confirmed it did not apply a "main customer draw" standard and saw "no reason to reconsider" its holding that the Complaint failed to allege a direct financial interest. *Id*. at 5. The Court granted relief on one point only: it concluded that its futility analysis as to the direct financial interest prong had perhaps gone too far, and it permitted Plaintiffs to file the SAC. *Id*. at 6-7.

In doing so, the Court was explicit about what it was not deciding. The Court declined to "treat briefing on this [reconsideration motion] as, effectively, briefing on a motion to dismiss an amended complaint that has not yet even been filed." ECF 52 at 7. It further noted that its "futility analysis did not grapple with Plaintiffs' ability to properly plead supervisory control" at all. *Id*.

Measured against the Court's two orders, the SAC still does not cure the defects that plagued the previously dismissed complaint.

*First*, Count II is derivative. It presupposes direct infringement by a person or entity other than Uber for which Uber is vicariously answerable. The SAC attributes the alleged copying in ¶¶ 36–43 to Uber itself; its employee-and-agent theory merely says that unidentified employees or

agents did the same, and its merchant theory is expressly conditional—"[t]o the extent" a merchant or other third party uploaded an image. SAC ¶¶ 60–68. Exhibit 1 identifies source images, Uber match pages, stored files, and screenshots, but not who uploaded any image or committed the alleged copying. The prayer likewise seeks a judgment based on the acts of an unnamed "person or entity who infringed." SAC at 14. Rule 8 permits alternative theories, but it does not permit conditional references to substitute for facts showing a pleaded third-party infringement.

*Second*, the new supervision allegations still do not show the right and ability to police copyright infringement. The SAC does not say what the alleged pre-display review examines, that Uber compares submissions against copyrighted works, or that Uber can determine ownership or permission. General content review, a merchant warranty, and a right to remove material are not, without more, a practical ability to identify and stop specific infringement.

*Third*, the SAC's financial theory remains the same attenuated chain the Court rejected: photographs generally may increase clicks or orders, orders generate food-sale commissions, and therefore an allegedly infringing photograph generated revenue. SAC ¶ 47. There is no allegation that any identified Photograph generated an order, that any unauthorized copy outperformed a lawful substitute, or that Uber's commissions depend on the alleged infringement rather than the underlying food sale.

*Fourth*, the SAC still does not plausibly plead the § 411(a) exception. Exhibit 2 supplies URLs and upload dates, not countries or facts about the method, extent, or purpose of first publication; many entries are marked "Unpublished" even though the SAC alleges that each was first published. If the public-webpage listings are publications, the SAC does not plead a geographic restriction or other fact avoiding simultaneous availability in the United States. If they are not publications, the SAC does not plead a coherent alternative or reconcile that designation

with ¶ 33. In either event, the SAC does not supply the first-publication facts the Court authorized Plaintiffs to add.

Count II should therefore be dismissed with prejudice because the SAC still fails to plead both independently required elements. The claims based on unregistered works should likewise be dismissed to the extent the SAC does not plausibly allege a registration or a § 411(a) exception, and the unavailable remedies should be stricken if any such claim remains.

## II. LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts well-pleaded factual allegations and reasonable inferences, but not legal conclusions, labels, or formulaic recitations. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). The Court generally considers the complaint and documents attached to or incorporated into it. ECF 34 at 3–5. Thus, the SAC must state a plausible claim from its own allegations and attachments; a party cannot cure a pleading defect through briefing.

Rule 12(f) permits the Court to strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Although striking is ordinarily disfavored, the Court has recognized that it is an appropriate mechanism to remove a prayer for relief that is unavailable as a matter of law. ECF 34 at 4–5 (citing *Pucci v. Carnival Corp.*, 160 F. Supp. 3d 1329, 1331 (S.D. Fla. 2016)). Striking such relief also avoids discovery directed to remedies the Copyright Act does not permit.

## III. ARGUMENT

### A. Plaintiffs' Repleaded Vicarious Copyright Infringement Claim Still Fails to State a Claim

Vicarious infringement is secondary liability. It presupposes direct infringement by a person or entity other than the defendant for which the defendant is answerable, and then requires allegations that the defendant (1) had the right and ability to supervise the direct infringer and (2) had a direct financial interest in the infringing activity. *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007); *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987); *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1214–15 (S.D. Fla. 2021), *amended in part on reconsideration*, No. 21-20862, 2022 WL 845468 (S.D. Fla. Mar. 22, 2022); ECF 34 at 5–6. The control element requires both a legal right to stop or limit the conduct and a practical ability to police the specific infringing activity, not merely a generalized ability to remove content. *Millennium Funding,* 576 F. Supp. 3d at 1215; *Athos Overseas Ltd. Corp. v. YouTube, Inc.*, 162 F.4th 1330, 1345–46 (11th Cir. 2026). Vicarious liability may extend to employees and independent contractors, but that does not eliminate the need to plead the underlying direct infringement and facts supporting both elements. *S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985). The financial-interest element requires a causal relationship between the infringing activity and the defendant's profit, not a general benefit from operating its business. *Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1282 (S.D. Fla. 2012); *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, 707 F. Supp. 2d 1287, 1297–98 (M.D. Fla. 2010), *aff'd*, 425 F. App'x 833 (11th Cir. 2011).

The Court's April order applied these standards and held that the original Complaint supplied no non-conclusory allegations showing how Uber could supervise or control the alleged infringers, and no facts showing a direct financial interest. ECF 34 at 9–12. The August order left

the supervisory-control holding undisturbed, clarified that the Court's reasoning did not turn on platform size, and confirmed that it required a direct financial interest—not a "main customer draw." ECF 52 at 4–5. The August order reconsidered only the earlier conclusion that amendment would necessarily be futile on the financial-interest prong; it did not hold that Plaintiffs' proposed allegations were sufficient. *Id.* at 6–7. The SAC therefore must be tested against both elements.

### *i. The SAC Does Not Plead the Required Predicate Infringement or Practical Supervisory Control*

Vicarious liability cannot be imposed in the abstract. The SAC attributes the alleged conduct in ¶¶ 36–43 to Uber: "Defendant" accessed, copied, stored, displayed, and distributed the Photographs. Count II then alleges that unnamed Uber "employees or agents" did the same, and, alternatively, that "to the extent" a merchant or other third party uploaded a Photograph, Uber is vicariously liable. SAC ¶¶ 60–68. Those allegations do not plead a concrete predicate infringement. The employee-and-agent theory identifies no actor, Photograph, or act; the merchant theory does not allege that any merchant uploaded any Photograph. Exhibit 1 supplies source links and Uber match pages, but no uploader, copying event, or other fact identifying the direct infringer. Rule 8(d)(2) permits alternative statements only if one alternative is sufficient; it does not make a conditional "to the extent" allegation sufficient by itself.

The employee-and-agent allegations do not make Count II categorically duplicative—Rule 8 can permit direct and vicarious theories in the alternative. But the SAC still must plead an underlying act of infringement by an employee or agent for which Uber is vicariously answerable. The Court observed that a claim limited to employees acting within the scope of employment would be understandable as an outgrowth of respondeat superior. ECF 34 at 9. That observation does not dispense with the predicate act. Here, the SAC offers only the legal conclusion that "Uber's employees or agents ... reproduced, displayed, and distributed" the Photographs, followed

by the conclusion that Uber is vicariously liable. SAC ¶¶ 60–63. It does not tie any employee or agent to any Photograph or act listed in Exhibit 1, and it does not distinguish an employee's alleged infringement from the direct infringement the SAC attributes to Uber. The employee theory therefore supplies no pleaded third-party act.

The merchant-and-third-party theory is even more conditional. The SAC says only that "[t]o the extent" any Photograph was uploaded by a merchant or other third party, Uber is vicariously liable. SAC ¶ 64. It does not allege that a merchant uploaded a particular Photograph, identify any merchant or uploader, or describe how a particular person copied or displayed it. Exhibit 1's source URLs, Uber page URLs, stored-file URLs, and screenshots show only the asserted source and match locations; they do not identify who uploaded the image or who committed the copying. The prayer's reference to the acts of "the person or entity who infringed" confirms the omission. SAC at 14. A conditional reference to an unnamed actor cannot satisfy the predicate-infringement requirement.

Even if the Court reaches supervision, the SAC still does not plead practical control. The SAC alleges that Uber operates a "curated commercial marketplace," reviews photographs before display, reserves the right to approve, reject, or remove them, and requires a merchant warranty of usage rights. SAC ¶¶ 44–46, 65–66. But it does not allege what the review examines, that Uber compares each submission against third-party works, that Uber has access to ownership or license information, or that Uber has a workable process for determining whether a photograph was copied. The merchant warranty places rights-clearance responsibility on the merchant; it does not show that Uber can police copyright infringement. And a general right to remove material after the fact is not, without more, a practical ability to identify and stop a specific infringement. *See Millennium Funding,* 576 F. Supp. 3d at 1215; *Athos*, 162 F.4th at 1345–46. The SAC alleges no

targeted anti-infringement tool, rights database, notice-based process, or actual copyright screening. It therefore supplies the same formulaic allegation the Court rejected, albeit with more detail. ECF 52 at 5.

***ii. The SAC Does Not Plead a Direct Financial Interest in the Infringing Activity***

A direct financial interest requires facts showing that Uber profited directly from the alleged infringement and a causal relationship between the infringing material and Uber's financial benefit. A generalized benefit from operating the platform is not enough. *BUC*, 489 F.3d at 1138 n.19; *Coach*, 916 F. Supp. 2d at 1282; *Klein*, 707 F. Supp. 2d at 1297–98; *Payne v. Essential Media Grp. LLC*, No. 24-CV-21119-RAR, 2024 U.S. Dist. LEXIS 102118, at *13 (S.D. Fla. June 8, 2024) (requiring specific allegations about the nature of the financial interest and each defendant's role). The Court previously found that Plaintiffs alleged no more than a "theoretical general benefit." ECF 34 at 10–12. Uber does not ask the Court to impose a "main customer draw" requirement; even under the Court's stated direct-financial-interest standard, the SAC's allegations do not connect Uber's profit to the alleged infringement.

The SAC's new allegations still plead only that general chain. Paragraph 47 cites a statistic that restaurants displaying a relevant dish image saw "up to 20% more clicks and up to 32% more orders," and then relies on Uber's percentage-based service fee. SAC ¶ 47. Even accepting those allegations, the statistic concerns photographs generally, not the Photographs at issue. It does not allege that any particular Photograph generated a click, an order, or a commission; that any unauthorized copy generated a benefit a lawful image would not; or that Uber's commission changed depending on whether the image was authorized. The SAC identifies no customer, restaurant, order, photograph, or amount of revenue. Its conclusion that "each resulting order" produced commission revenue simply assumes the missing causal link.

The fee allegation confirms rather than cures the defect. The SAC says Uber's service fee is calculated as sales multiplied by the applicable restaurant commission rate. SAC ¶ 47. That is a fee on food sales; Uber does not license, sell, or charge for the Photographs. A lawful photograph of the same dish would generate the same click, order, and commission on the SAC's theory. Thus, the alleged revenue flows from the underlying food transaction, not from infringement of the photograph. *Coach* does not support Plaintiffs' theory: there, the flea-market operators received rent from vendors selling counterfeit Coach goods, and the infringing goods were the subject of the sale. 916 F. Supp. 2d at 1282. Here, customers purchase food, not Plaintiffs' Photographs, and the SAC alleges no facts showing that any order depended on an unauthorized image rather than a lawful substitute. The SAC therefore offers the same "attenuated link between photographs, sales, and financial benefit" the Court found "far too speculative." ECF 34 at 23.

This defect cannot be deferred as a fact question. The Court need not decide at the pleading stage whether any photograph actually influenced a customer; it need only determine whether the SAC pleads facts permitting a reasonable inference of a direct financial interest in the infringement. The SAC identifies no incremental order, commission, or advantage attributable to any alleged unauthorized copy, and no reason an unauthorized photograph would generate more revenue than an authorized one. Discovery cannot supply a missing element where the pleading offers only a general statistic and a conclusory application to every Photograph. Count II thus fails on this independent ground. Because Plaintiffs have now used the Court-authorized opportunity to plead the element, further amendment would be futile. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004); *Guerrero v. Magnus Sports, LLC*, 820 F. Supp. 3d 1362, 1383 (S.D. Fla. 2026).

**B. Plaintiffs Still Fail to Plead a § 411(a) Exception for the Unregistered Works**

Section 411(a) generally requires a copyright owner to obtain a registration—or a refusal to register—before commencing an infringement action involving a United States work. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 300-01 (2019); 17 U.S.C. § 411(a). A foreign work is not subject to that pre-suit requirement, but a plaintiff invoking the exception must plead facts showing that the work was first published abroad and that the geographic extent of that first publication does not make it a "United States work." *See Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1304–05 (11th Cir. 2012) ("*Kernel Records II*"); *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1349 (S.D. Fla. 2017). The Court previously held that some factual content about first publication was required and granted leave solely to cure that deficiency. ECF 34 at 17–20, 24–25. The SAC still does not do so.

Paragraph 33 labels every Photograph without a registration number a foreign work and alleges that "[e]ach such Photograph was first published in the country and on the date identified in Exhibit 2, prior to any publication in the United States." SAC ¶ 33. But Exhibit 2's column labeled "Intial [*sic*] Display Location" contains URLs, not countries. Its "Upload Date" column supplies dates, but no facts about the method, audience, extent, or purpose of the alleged first publication. A nationality column is not a place-of-first-publication allegation. Nor does Exhibit 1 identify where or how any work was first published. The listed URLs include public websites and image galleries, yet the SAC alleges no geoblocking, geographic limitation, or other restriction making the initial displays unavailable in the United States. The SAC therefore does not plausibly plead first publication abroad or facts showing that the works are not "United States works." The photographers' nationalities do not fill that gap, as the Court already held. ECF 34 at 19–20.

Exhibit 2 also creates an unresolved inconsistency that defeats plausibility without requiring the Court to treat the exhibit as a separate evidentiary submission or decide that the exhibit automatically "controls." The SAC must be read with its attachment, and the attachment does not supply the facts the SAC says it contains. Paragraph 33 alleges that each work "was first published," yet most entries in Exhibit 2 are marked "Unpublished" while listing publicly accessible webpages as the "Intial [*sic*] Display Location." If those webpages were publications, the SAC does not plead facts preventing simultaneous availability in the United States. Under *Kernel Records II*, simultaneous worldwide availability of a public website may be presumed, and *Kernel Records Oy v. Mosley*, 794 F. Supp. 2d 1355, 1365-73 (S.D. Fla. June 7, 2011) ("*Kernel Records I*") treated website publication as tantamount to global and simultaneous dissemination. *See also Pryimachenko v. HBO, Inc.*, No. 23-CV-10034 (LAK) (RWL), 2025 U.S. Dist. LEXIS 8168, at *27-28 (S.D.N.Y. Jan. 14, 2025) (finding posted YouTube video was simultaneously published in the United States and Ukraine). Those allegations describe "United States works" subject to § 411(a), not exempt foreign works. If the entries were not publications, the SAC does not plead a coherent alternative explaining whether it relies on unpublished status, why that status is consistent with ¶ 33, or why each work is exempt under § 101. Read as a whole, the SAC fails under either characterization.

### C. The SAC's Requests for Statutory Damages and Attorneys' Fees on Unregistered Works Should Be Stricken

If any claim based on an unregistered work survives, the associated remedies do not. Section 412 separately bars statutory damages and attorneys' fees for infringement of an unregistered work, including a foreign work; the foreign-works exception in § 411(a) eliminates the pre-suit registration requirement, not the separate § 412 limitation. *See* 17 U.S.C. § 412; *Kernel Records I*, 794 F. Supp. 2d at 1367; ECF 4 at 20–21. The SAC's prayer conditions statutory

damages on whether "the registration status" qualifies, but a work does not qualify merely because Plaintiffs label it foreign. Its request for attorneys' fees likewise cannot overcome § 412. To the extent any claim based on an unregistered work remains, the Court should strike these legally unavailable remedies under Rule 12(f) and avoid discovery directed to relief the Copyright Act does not permit.

## IV. CONCLUSION

Uber respectfully requests that the Court enter an order: (1) dismissing Count II with prejudice; (2) dismissing with prejudice all claims to the extent they are based on works for which Plaintiffs plead neither a registration nor facts plausibly establishing an exemption under § 411(a); and (3) alternatively, if any such claim remains, striking under Rule 12(f) the SAC's requests for statutory damages and attorneys' fees insofar as they are based on unregistered works.

Dated: August 24, 2026

Respectfully submitted,

*/s/ Ana M. Barton*

Ana M. Barton
Florida Bar No. 85721
Reed Smith LLP
200 South Biscayne Boulevard, Suite 2600
Miami, FL 33131
Tel: +1 786 747 0200
Fax: +1 786 747 0299
Email: abarton@reedsmith.com

Christopher J. Pulido (Pro Hac Vice)
Reed Smith LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Tel: +1 415 543 8700

*Counsel for Defendant Uber Technologies, Inc.*