**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:25-cv-24834-BB**

MARINA HELENE ASCHABER, CHARLIE BARD, SARAH BARNES, KATHLEEN BERGET, HELEN BEST-SHAW, JULIA VERA FOERSTER, DANNY GHITIS, BENJAMIN GORGES, MEGGAN HILL, DENNIS LITTLEY, LAZY CAT ENTERPRISES LTD., MICHELLE MINNAAR, FLORIAN NOUH, JUDY L. PURCELL, RENEE ROBLEY SMITH, HEATHER SZUTKA, SARAH TRENALONE, MARCO VERCH, CANDICE WALKER, CHRISTINA CONTE WARTINBEE, AND WENDIE WILLIAMS,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC.,

Defendant.

---

**OPPOSITION TO DEFENDANT UBER TECHNOLOGIES, INC.'S PARTIAL MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT**

Plaintiffs MARINA HELENE ASCHABER, CHARLIE BARD, SARAH BARNES, KATHLEEN BERGET, HELEN BEST-SHAW, JULIA VERA FOERSTER, DANNY GHITIS, BENJAMIN GORGES, MEGGAN HILL, DENNIS LITTLEY, LAZY CAT ENTERPRISES LTD., MICHELLE MINNAAR, FLORIAN NOUH, JUDY L. PURCELL, RENEE ROBLEY SMITH, HEATHER SZUTKA, SARAH TRENALONE, MARCO VERCH, CANDICE WALKER, CHRISTINA CONTE WARTINBEE, AND WENDIE WILLIAMS by and through their undersigned counsel, and for its Opposition To Defendant UBER TECHNOLOGIES,

INC.'s ("Uber") Partial Motion to Dismiss and Strike Second Amended Complaint [ECF No. 58], states as follows:

## I. INTRODUCTION

Uber's Partial Motion to Dismiss and Strike Second Amended Complaint ("Motion") should be denied. Uber argues that Plaintiffs' Second Amended Complaint ("SAC") does not identify specific employees or merchants that uploaded specific photographs. (ECF No. 58 at 6–7). Plausibility does not require that specific people be identified. The SAC alleges Uber's employees and agents, acting within the scope of their employment, reproduced, displayed, and distributed the Photographs at issue. (SAC ¶¶ 60–63). Those acts give rise to Uber's liability based on respondeat superior. The SAC states facts showing that infringing conduct was committed by Uber's own personnel acting in that capacity, and that is sufficient.

Uber also argues that the SAC fails to allege control. However, the control allegations of the SAC are drawn directly from Uber's own published guidelines. The SAC alleges that in order for a merchant- or user-submitted photograph to reach the Uber Eats platform that photograph must have been reviewed and approved by Uber's employees or agents. (SAC ¶¶ 65–66). The SAC also alleges that use of Uber's platform requires merchants to warrant they "ha[ve] usage rights and [don't] violate any 3rd party rights" as a condition of upload. (SAC ¶44). The SAC also alleges that Uber retains ongoing contractual authority to approve, reject, remove, or modify any submitted photograph at any time. (SAC ¶¶ 44–46 & fn.1–5). Taken together, these allegations show Uber is the mandatory gatekeeper for every photograph, clearing each one before it reaches the platform, and Uber's own merchant warranty requirement confirms its control and supervision.

The SAC also sufficiently alleges Uber's direct financial interest. Uber's own published statistics state that restaurants displaying relevant dish photographs receive up to 20% more clicks

and up to 32% more orders than listings without them, and the SAC explains how those additional orders generate commission revenue for Uber. (SAC ¶ 47). Uber argues that Plaintiffs must go further and identify a particular Photograph that generated a particular order or commission, or establish that an unauthorized Photograph generated more revenue than a lawful substitute. (Motion at 8–9). But those arguments demand evidentiary proof at the pleading stage, including transaction-level information uniquely within Uber's possession. The SAC plausibly alleges the required connection between the display of the Photographs, increased orders, and Uber's resulting commission revenue.

Uber's challenge to the unregistered foreign Photographs likewise fails. For each unregistered Photograph, the SAC alleges that the work was first published in the country and on the date identified in Exhibit 2, prior to any publication in the United States. (SAC ¶ 33). Exhibit 2 provides the work-specific country and publication-date information (Ex. 2). These allegations plausibly plead first publication abroad preceding any U.S. publication. Uber's reliance on certain entries labeled "Unpublished" and its argument that the identified webpages may have been simultaneously accessible in the United States raise factual issues concerning the circumstances of publication, not grounds to resolve those issues against Plaintiffs at the pleading stage.

Uber's request to strike statutory damages and attorneys' fees is similarly premature. Whether those remedies are available under 17 U.S.C. § 412 depends on the registration, publication, and infringement timeline applicable to each individual Photograph. Uber seeks blanket relief across more than a hundred separately identified works without establishing from the pleadings that those remedies are unavailable as a matter of law as to each work.

Accordingly, Uber's Motion should be denied. The SAC alleges predicate infringement by Uber's employees, agents, and, alternatively, third parties; concrete mechanisms through which

Uber supervises and controls the Photographs displayed on its platform; a direct financial relationship between the display of photographs, increased orders, and Uber's commission revenue; and work-specific facts supporting the foreign-work allegations. Nothing in Uber's Motion warrants dismissal of Count II with prejudice or the blanket striking of Plaintiffs' requested remedies. To the extent the Court finds any particular allegation requires greater specificity, Plaintiffs respectfully request leave to amend.

## II. LEGAL STANDARD

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive dismissal, a complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). The Court accepts well-pleaded factual allegations and all reasonable inferences in Plaintiffs' favor, disregarding only legal conclusions and formulaic recitations of a claim's elements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). A complaint may not be dismissed for failure to state a claim under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

Plausibility "does not impose a probability requirement," and it does not require Plaintiffs to plead, with the specificity of facts within their own knowledge, the internal technical mechanics of a review system that only Uber designs and operates. *Iqbal*, 556 U.S. at 678.

Rule 12(f) permits the Court to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). Striking is an appropriate mechanism where a prayer for relief seeks something unavailable as a matter of law on the facts as pleaded. *Pucci v. Carnival*

*Corp.*, 160 F. Supp. 3d 1329, 1331 (S.D. Fla. 2016). That standard cuts against Uber's Motion here: where the availability of a remedy turns on facts specific to individual works that have not yet been developed, such as with the registration and first-publication status of more than a hundred separately identified Photographs, striking is premature because the relief is not shown to be unavailable as a matter of law on this pleading; its availability simply has not yet been tested work-by-work.

Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 230 (1962). Dismissal with prejudice — the relief Uber seeks as to Count II — is warranted only where amendment would be futile, meaning the amended pleading could not state a claim under any circumstances. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004). Similarly, striking the material from this matter is too drastic of a measure to take where Plaintiffs have provided additional information about the works, and can plead with further specificity should the Court require any additional information about those works. With the additional information provided in the SAC, all of Uber's issues identified in the current Motion have been addressed. Accordingly, Uber's Motion should be denied in its entirety, allowing the parties to engage in fact discovery to further develop the factual record for adjudication of the claims asserted in the SAC.

## III. ARGUMENT

### *A. The SAC States a Plausible Claim for Vicarious Copyright Infringement*

1. <u>The SAC Adequately Pleads a Predicate Infringement by an Actor Other Than Uber</u>

Vicarious liability presupposes direct infringement by a person or entity other than the defendant for which the defendant is answerable. *S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publrs.*, 756 F.2d 801, 811 (11th Cir. 1985). With vicarious liability, an individual or

entity who has the ability to supervise infringing activity and has a financial interest in that activity, or who specifically participates in that activity, is itself held jointly liable for the infringement. *Id.* Uber argues that Count II fails at this threshold because the SAC does not identify which specific employee, agent, or merchant uploaded which specific Photograph. That demand exceeds what Rule 8 requires. Fed. R. Civ. P. 8. The SAC alleges, as a predicate matter, that Uber's own employees and agents reproduced, displayed, and distributed the Photographs. (SAC ¶¶ 60–63). In the alternative, that to the extent a merchant or other third party uploaded a given Photograph, that upload occurred through Uber's own mandatory review gate. (SAC ¶¶ 44–46, 64–68). Rule 8(d)(2)(3) expressly permits a plaintiff to plead alternative and even inconsistent theories without electing between them, "regardless of consistency," precisely because a plaintiff often cannot know, before discovery, whether a given act of infringement was committed by a defendant's own personnel or by a third party operating through channels the defendant controls. Plaintiffs cannot yet know, without discovery into Uber's own upload logs and personnel records, which Uber employee or agent handled a given Photograph, or which merchant account uploaded it, information uniquely within Uber's possession. *Twombly* and *Iqbal* do not require Plaintiffs to plead facts peculiarly within Uber's own knowledge and control with the particularity demanded of facts within Plaintiffs' own knowledge. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

The employee-and-agent theory and the merchant theory both describe conduct culminating in the same displayed image as Count I's direct-infringement allegations, but that overlap does not make Count II duplicative or conclusory. A corporate defendant's own direct conduct and the conduct of its employees or third parties acting through channels it controls are doctrinally distinct bases for liability, and Rule 8(d)(3) allows Plaintiffs to plead both in the alternative without conceding which one discovery will bear out. This is a proposition the SAC

satisfies by alleging, in the alternative, an infringing act by Uber's own employees or agents and, separately, by merchants operating through Uber's mandatory review process. (SAC ¶ 64).

2. The SAC's Mandatory Pre-Publication Review Allegations Plausibly Allege a Practical Ability to Supervise

Uber's central attack is that the SAC does not allege that Uber's review process "compares submissions against copyrighted works" or lets Uber "determine ownership or permission." That describes a technical capability no plaintiff could plead without discovery into a defendant's internal systems, and it is not what the right-and-ability-to-supervise element requires. *Millennium Funding, Inc. v. 1701 Mgmt. Ltd. Liab. Co.*, 576 F. Supp. 3d 1192, 1215 (S.D. Fla. 2021). The element asks whether Uber has a legal right to stop or limit the infringing conduct and a practical ability to police it — not whether Uber operates a functioning copyright-detection algorithm. *Id.*

The SAC alleges both. On the legal-right prong, it alleges that Uber's merchant agreements give it "the contractual right to reject, remove, or modify any uploaded photograph at any time, for any reason," an authority the SAC alleges is "ongoing and not limited to the moment of initial upload." (SAC ¶ 46). On the practical-ability prong, it alleges that no merchant- or user-submitted photograph reaches the platform "without internal review and approval" by Uber's own employees and agents, occurring "before it is displayed on the platform." (SAC ¶¶ 44–45). This is not the passive, after-the-fact takedown right that has defeated vicarious liability claims elsewhere; it is a gate every Photograph must clear before the public ever sees it.

The swap-meet operator in *Fonovisa* did not screen its vendors' merchandise against any such registry; its right and ability to supervise rested on its control over who could sell at the swap meet and its retained right to terminate vendors, not on any technical capacity to detect counterfeits before they reached a table. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir.

1996). Uber's mandatory review-and-approval gate, combined with its ongoing contractual removal right, has the same kind of practical control over what appears on its platform, regardless of whether that review is in fact calibrated to catch copyright infringement specifically or platform-guideline violations generally. Whether Uber's actual review process is, in practice, capable of catching a copied photograph is a question about the adequacy of a control mechanism the SAC plausibly alleges exists, a question for discovery, not a basis to dismiss the claim as insufficiently pled.

The holding in *Athos Overseas Ltd. Corp. v. YouTube, Inc.* has no bearing at this stage. *Athos Overseas Ltd. Corp. v. YouTube, Inc.*, 162 F.4th 1330, 1345–46 (11th Cir. 2026). The Eleventh Circuit reached that result on summary judgment, after full discovery into the specific technical capabilities of YouTube's after-the-fact hash-matching tools, and it construed the "right and ability to control" standard inside the distinct statutory framework of the DMCA's § 512(c) notice-and-takedown safe harbor —a safe harbor Uber does not invoke here. *Id.* The SAC alleges the opposite architecture: mandatory human review before publication, not automated matching after it. (SAC ¶¶ 62-63). Whether that distinction holds up on a developed record is a question for summary judgment, not this motion focused on sufficiency of the pleadings.

3. <u>The SAC's Quantified Allegations Plausibly Allege a Direct Financial Interest, and Any Remaining Gap Warrants Amendment Rather Than Dismissal With Prejudice</u>

The direct-financial-interest element requires a causal relationship between the infringing activity and Uber's profit, not a generalized benefit from operating its business. *Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1282 (S.D. Fla. 2012). The SAC does not repeat the "theoretical general benefit" this Court already rejected. Uber's own published statistic states that a dish photograph drives "up to 20% more clicks and up to 32% more orders" on a listing, and it

alleges the formula by which that additional order becomes Uber's revenue: Uber's service fee is calculated as sales multiplied by the applicable commission rate. Those allegations connect the display of a photograph, the additional orders it generates, and Uber's resulting commission through a specific, arithmetic relationship supplied by Uber's own materials, not a generalized assertion that operating a large marketplace happens to be profitable. (SAC ¶ 47).

Uber demands more than the law requires: that the SAC tie a specific, identified Photograph to a specific order, or prove that an infringing photograph outperformed a hypothetical lawful substitute of the same dish. Neither showing belongs at the pleading stage, and Uber cites no authority holding otherwise. In *Coach*, the plaintiff was not required to trace which counterfeit handbag sale produced which dollar of rent; it was enough that the complaint alleged a plausible relationship between the defendant's toleration of infringing merchandise and the revenue that resulted from customers drawn to buy it. *Coach*, 916 F. Supp. 2d at 1282. The SAC alleges exactly that relationship here: photographs measurably increase the orders that generate Uber's commission, and every listing identified in Exhibit 1 displayed one of Plaintiffs' unauthorized Photographs to do precisely that. (SAC ¶ 47). Uber's argument that a lawful substitute photograph would have generated the identical lift is not a pleading defect; it is a factual claim Uber has not proven, and cannot prove on a motion to dismiss. Uber, not Plaintiffs, holds the order and click-through data that would answer that question, and Uber cannot invoke the absence of evidence only discovery can produce as a reason to end the case before discovery begins.

***B. The SAC Plausibly Invokes the 17 U.S.C. § 411(a) Foreign-Works Exception***

Section 411(a) requires registration, or a refusal to register, only as a precondition to suit on a "United States work"; a work first published abroad without simultaneous publication in the United States is exempt. 17 U.S.C. § 411(a); 17 U.S.C. § 101. A plaintiff invoking the exception

must plead facts establishing the method, extent, and purpose of the alleged first distribution; that the distribution was in fact the first publication; and that its geographic extent takes the work outside the statutory definition of a "United States work." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1304–05 (11th Cir. 2012).

The SAC satisfies that standard. For each unregistered Photograph, the SAC alleges that the work "was first published in the country and on the date identified in Exhibit 2, prior to any publication in the United States." (SAC ¶ 33). Exhibit 2, in turn, provides the work-specific country and publication-date information missing from the original Complaint. (Ex. 2). Taken together, and construed in Plaintiffs' favor at this stage, these allegations plausibly plead first publication abroad preceding any U.S. publication—precisely the showing this Court found lacking in the original Complaint. (ECF No. [34] at 17–20).

Uber's argument rests entirely on a single column in Exhibit 2 that labels certain entries "Unpublished" notwithstanding paragraph 33's allegation that each work was "first published" abroad. At most, that label creates an ambiguity between one column of a supporting exhibit and the complaint's operative factual allegation. Resolving that ambiguity against Plaintiffs by assuming the label controls over the pleaded allegation it accompanies is not the Court's role on a motion to dismiss. The Court must instead draw the inference that favors Plaintiffs, and the reasonable inference is that paragraph 33's specific, work-by-work factual allegation, not an ambiguous exhibit label, states what Plaintiffs allege. (SAC ¶ 33); Fed. R. Civ. P. 8. If Uber believes the label means something inconsistent with that allegation, that is a matter for discovery and, if necessary, summary judgment – not a basis to dismiss a well-pled paragraph now. *Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355, 1368 (S.D. Fla. 2011).

Nor does this Court's decision in *Kernal Records* support dismissal here. *Id. Kernal Records* addressed, on a fully developed summary-judgment record, whether a specific song had in fact been made available for download from a specific website in a manner establishing simultaneous worldwide publication, a finding the court reached only after discovery into precisely how, when, and to what audience that particular work had been disseminated. *Id.* at 1362. Uber asks the Court to reach the equivalent conclusion here, on the pleadings alone, based on nothing more than the presence of a URL in one column of an exhibit without any discovery into whether the webpages identified as each Photograph's first display location were in fact public, unrestricted, and simultaneously accessible in the United States, as opposed to a client gallery, a print or exhibition submission, or some other more limited form of distribution. The SAC does not need to anticipate and negate that evidentiary showing at the pleading stage; it need only plausibly allege, as it does, that first publication occurred abroad before any publication in the United States. (SAC ¶ 33). Whether the facts ultimately resemble those in *Kernal Records* is a question for a developed record, not this motion.

***C. Striking the SAC's Damages and Fees Allegations Under 17 U.S.C. § 412 Is Premature Because Availability Turns on Registration Facts Specific to Each Work***

Plaintiffs do not dispute the general proposition that remedies for infringement are limited to ones that occur before a work's effective registration date, subject to the statute's own grace period for registration within three months of first publication. 17 U.S.C. § 412. But that limitation is inherently work-specific: it depends on whether, and when, each individual work was registered, and whether the infringement alleged as to that work occurred before or after registration or before first publication altogether. The SAC and its exhibits identify more than a hundred separate Photographs, and Uber's Motion does not, because it cannot, on the pleadings establish that every

one of those works falls outside every circumstance in which statutory damages and fees are permitted, notwithstanding a registration that post-dates first publication. 17 U.S.C. § 412.

Striking a remedy under Rule 12(f) is appropriate where the pleaded facts show the relief is unavailable as a matter of law. *Pucci*, 160 F. Supp. 3d at 1331. It is not appropriate where, as here, the facts determining availability, the registration and infringement timeline for each of more than a hundred separately identified works have not yet been tested against the statute on a work-by-work basis. If, after discovery proceeds, it becomes clear that statutory damages or fees are unavailable as to some identified subset of works, the appropriate remedy at that stage is a tailored ruling limiting relief as to those specific works, not the blanket, complaint-wide strike Uber requests now.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Uber's Motion in its entirety, including as to Count II, the SAC's foreign-works allegations, and the associated request to strike the SAC's damages and fees allegations under 17 U.S.C. § 412. To the extent the Court nonetheless finds any element insufficiently pled, Plaintiffs respectfully request leave to amend rather than dismissal with prejudice.

WHEREFORE, Plaintiffs MARINA HELENE ASCHABER, CHARLIE BARD, SARAH BARNES, KATHLEEN BERGET, HELEN BEST-SHAW, JULIA VERA FOERSTER, DANNY GHITIS, BENJAMIN GORGES, MEGGAN HILL, DENNIS LITTLEY, LAZY CAT ENTERPRISES LTD., MICHELLE MINNAAR, FLORIAN NOUH, JUDY L. PURCELL, RENEE ROBLEY SMITH, HEATHER SZUTKA, SARAH TRENALONE, MARCO VERCH, CANDICE WALKER, CHRISTINA CONTE WARTINBEE, AND WENDIE WILLIAMS request that Defendant UBER TECHNOLOGIES INC.'s Partial Motion

to Dismiss and Strike Second Amended Complaint [ECF No. 58], be denied with prejudice and for such other and further relief deemed equitable or necessary.

Dated: September 8, 2026

Respectfully submitted,

*/s/ Sanje V. Lara*
SANJE V. LARA
Florida Bar Number: 1031680
sanje.lara@sriplaw.com
Florida Bar Number: 98220
joel.rothman@sriplaw.com

**SRIPLAW, P. A.**
21301 Powerline Road
Suite 212
Boca Raton, FL 33433
786.743.0018 – Telephone
561.404.4353 – Facsimile

and

EVAN A. ANDERSEN *(pro hac vice)*
evan.andersen@sriplaw.com

**SRIPLAW, P. A.**
3355 Lenox Road NE
Suite 750
Atlanta, GA 30326
470.598.0800 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiffs*