**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| MARINA HELENE ASCHABER, CHARLIE BARD, SARAH BARNES, KATHLEEN BERGET, HELEN BEST-SHAW, JULIA VERA FOERSTER, DANNY GHITIS, BENJAMIN GORGES, MEGGAN HILL, DENNIS LITTLEY, LAZY CAT ENTERPRISES LTD., MICHELLE MINNAAR, FLORIAN NOUH, JUDY L. PURCELL, RENEE ROBLEY SMITH, HEATHER SZUTKA, SARAH TRENALONE, MARCO VERCH, CANDICE WALKER, CHRISTINA CONTE WARTINBEE, AND WENDIE WILLIAMS,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | CIVIL ACTION NO. 1:25-cv-24834-BB |

**UBER'S REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

Having already been granted the opportunity to amend their complaint to plausibly state a claim, Plaintiffs now ask the Court to excuse the same defects it has identified twice. This is Plaintiffs' third pleading and their second attempt to state a vicarious-infringement claims. In its April order, the Court dismissed Count II because the Complaint offered only a "formulaic recitation" of supervisory control and nothing "beyond a theoretical general benefit" on financial interest. ECF No. 34 at 9–12. In its August reconsideration order, the Court left the supervisory-control ruling intact, confirmed that the dismissal rested on Plaintiffs' failure to offer non-conclusory allegations, and again declined to disturb its holding that Plaintiffs have not pleaded a direct financial interest. ECF No. 52 at 4–7. The SAC still does not cure those deficiencies. Despite three opportunities to plead a viable vicarious infringement claim, Plaintiffs continue to offer the same conclusory allegations.

Plaintiffs' Opposition confirms their strategy: defer every missing element to discovery rather than plead facts now, which *Twombly* and *Iqbal* do not permit. Plaintiffs' repeated requests for leave to amend further confirm that the SAC is inadequate as pleaded. Uber's Motion should therefore be granted.

## II. ARGUMENT

### A. The SAC Does Not Plead the Required Predicate Infringement

Vicarious liability requires direct infringement by a third party. *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007); *S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985). Yet the SAC attributes the identical conduct to Uber directly (¶¶ 36–43) and then to unnamed employees and agents (¶¶ 60–63), and conditionally to merchants (¶ 64). The SAC does not identify any individual, any employee, any

merchant, any specific act of copying, or any fact distinguishing the alleged third-party conduct from Uber's alleged direct infringement in Count I.

Rule 8(d)(2)–(3) permits alternative and even inconsistent theories; it does not excuse the total absence of factual allegations supporting each theory. Each alternative still must stand on its own factual footing. The employee-and-agent theory is a bare legal conclusion—"Uber's employees or agents . . . reproduced, displayed, and distributed the Photographs"—with no identified employee, no identified act, and no facts distinguishing the alleged employee conduct from the direct infringement alleged in Count I. The merchant theory is entirely conditional: it alleges only that "to the extent" any Photograph was uploaded by a merchant, Uber is vicariously liable. SAC ¶ 64. It does not identify a merchant, allege that any merchant uploaded any specific Photograph, or describe any particular third-party copying event. Exhibit 1 to the SAC identifies source URLs and Uber match pages, not an uploader or direct infringer. The SAC's prayer confirms the omission by seeking judgment for acts of "the person or entity who infringed." SAC at 14.

Plaintiffs' concession that they "cannot yet know" who uploaded each image without discovery, ECF No. 64 at 6, is not a pleading solution; it is an admission that the SAC lacks the required factual predicate. Plaintiffs concede then that the SAC does not identify a predicate infringer at all. Plaintiffs' request for leave to amend further underscores the deficiency—they seek another opportunity to identify the missing infringer because the SAC does not do so. *Twombly* and *Iqbal* do not excuse a complete absence of factual support merely because some information may be within a defendant's possession. Plaintiffs still must plead some facts permitting a reasonable inference that a person or entity other than Uber committed the predicate infringement. They have not identified any such person, act, or Photograph. Rule 8 allows Plaintiffs to plead

alternative theories; it does not allow them to plead only that one might later prove true. Count II therefore fails at the threshold.

### B. The SAC Still Does Not Plausibly Plead a Practical Ability to Supervise the Alleged Copyright Infringement

The SAC suffers the same deficiencies that plagued Plaintiffs' original Complaint. This Court dismissed Plaintiffs' vicarious claim because the Complaint offered only a "formulaic recitation" of the supervisory-control element. ECF No. 34 at 9. Ruling on reconsideration, the Court confirmed the dismissal rested on Plaintiffs' failure to offer any non-conclusory allegations relating to Defendant's supervisory control. ECF No. 52 at 5. The SAC continues to allege only legal conclusions.

The SAC conflates two fundamentally different capabilities: general content moderation to enforce platform guidelines—such as aesthetics and formatting—and the practical ability to identify, supervise, and stop copyright infringement. A reviewer who checks whether an image satisfies Uber's presentation standards—lighting, resolution, compliance with style guidelines—is not thereby equipped to determine whether the image was copied from a copyrighted work, who owns the underlying rights, or whether the uploader has permission to use it. Indeed, the SAC does not allege, because it cannot, that Uber's review process is designed for, or capable of, any of those determinations. The SAC alleges no comparison against copyrighted works, access to ownership or license information, rights database, notice-based process, or other mechanism for detecting infringement. A general right to approve, reject, remove, or modify content therefore does not show a practical ability to police specific infringement. *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1215 (S.D. Fla. 2021); *Athos Overseas Ltd. Corp. v. YouTube, Inc.*, 162 F.4th 1330, 1345–46 (11th Cir. 2026). Plaintiffs cite no decision from the Eleventh Circuit or

this Court holding that general content review for aesthetics or formatting satisfies supervisory control.

Even if Uber's general photo review was able to determine if an uploaded photograph was a copyrighted work, it still would lack insight into the uploader's rights, licenses, or other permissions. The merchant warranty makes the point worse, not better: requiring merchants to warrant that they have usage rights shows that Uber cannot independently verify copyright status. Assigning rights clearance to merchants is the opposite of supervisory control. If anything, the warranty confirms that Uber lacks the independent capability to verify copyright ownership and has instead contractually delegated that responsibility to the very parties whose conduct Plaintiffs claim Uber should be policing.

Plaintiffs' reliance on *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), does not help them. *Fonovisa* is a thirty-year-old Ninth Circuit decision, not binding in the Eleventh Circuit, and its facts are materially different: the swap-meet operator exercised physical, in-person control over admission to a limited number of booths and over which vendors could sell merchandise on premises that it physically patrolled. *Fonovisa* therefore does not support Plaintiffs' argument that Uber's general-content review of photographs at scale coupled with uploader warranties involved physical, in-person control over a finite, on-site marketplace. Plaintiffs cite no Eleventh Circuit or S.D. Fla. decision holding that general platform review satisfies supervisory control. Their two attempts to distinguish *Athos* likewise fail. The fact that *Athos* arose at summary judgment does not dilute its reasoning about what constitutes a "practical ability to police"; that principle applies at the pleading stage when the SAC itself alleges no such capability. And the DMCA safe-harbor distinction is a red herring. The underlying vicarious-liability analysis is the same: if YouTube's sophisticated hash-matching content-identification

technology was insufficient to establish practical control, Uber's general review process—which the SAC does not even allege is designed for or capable of detecting copyright infringement—is even more insufficient. *Athos,* 162 F.4th at 1345–46.

Plaintiffs' Opposition also fails to grapple with the distinction between a right to remove content upon notice and a practical ability to detect copyright infringement proactively. The SAC's allegations that Uber can "approve, reject, remove, or modify" photographs (SAC ¶¶ 44–46) describe a general content-moderation capability—the ability to act once a problem is brought to Uber's attention. But the supervisory-control element requires more: it requires the ability to identify infringing content in the first instance. *See Millennium Funding*, 576 F. Supp. 3d at 1215 (distinguishing between post-notice removal and impermissibly broad policing). Without some mechanism to determine whether any given photograph infringes any copyright, which the SAC fails to allege, Uber's general content-review process cannot constitute the "practical ability to police" that vicarious liability demands.

**C. Plaintiffs Fail to Plead Direct Financial-Interest**

This Court rejected Plaintiffs' prior allegations of a direct financial benefit because the Complaint offered nothing "beyond a theoretical general benefit." ECF No. 34 at 10–12. The August reconsideration order did not hold that Plaintiffs could proceed on a generalized theory; it merely allowed them an opportunity to plead facts supporting the element. ECF No. 52 at 5–7.

The SAC's only added allegation is a general statistic posted on Uber's website that restaurants displaying a relevant dish image saw "up to 20% more clicks and up to 32% more orders," followed by the unsupported allegation that Uber charges a percentage-based service fee. SAC ¶ 47. But that statistic concerns *photographs generally*—any photograph of food—not the specific copyrighted Photographs at issue. A lawful photograph of the same dish—or a generic

stock image—would generate the identical lift on Plaintiffs' own theory and therefore the identical order and commission. Such a concession is fatal: it means the financial benefit Plaintiffs identify flows from the presence of any food photograph, not from the use of a copyrighted one. The direct financial interest has to be in the infringement itself, and Plaintiffs' own allegations demonstrate it is not.

Uber's revenue derives from food sales, not from licensing or selling Plaintiffs' Photographs. Customers purchase food, not photographs. The commission is a percentage of the food sale and does not change based on whether the listing displays an authorized image, an unauthorized image, or a generic stock photo of the same dish.

Plaintiffs' reliance on *Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271 (S.D. Fla. 2012), is factually inapposite. In *Coach*, the counterfeit goods were themselves the products being sold; the flea-market operator's rent was derived from vendors selling the infringing merchandise. 916 F. Supp. 2d at 1282. Here, customers purchase food, not photographs. Any benefit from an image is at most incidental to the lawful food transaction, and the SAC pleads no facts showing that any order depended on an unauthorized photograph rather than a lawful substitute. Unlike in *Coach*, where the infringing goods themselves generated the operator's rent, the SAC identifies no link between any unauthorized image and any Uber commission. The SAC offers only an "attenuated link between photographs, sales, and financial benefit" that this Court found "far too speculative." ECF No. 34 at 23.

Plaintiffs' information asymmetry argument conflates pleading adequacy with evidentiary burdens. The question now is whether the SAC states a plausible claim from its own allegations, not whether Uber may possess helpful transaction-level data. The SAC does not even allege that any specific Photograph generated any specific order, click, or commission. Nor does it allege that

an unauthorized image generated an order that a lawful substitute would not have generated. The direct financial interest must be in the *infringement*, not in the underlying lawful food transaction to which the alleged infringement may be tangentially related. Discovery cannot supply these missing allegations.

The SAC therefore pleads no direct benefit from infringement and no causal relationship between any alleged infringement and Uber's commissions. It offers only a chain of speculation: a photograph generally may increase clicks or orders, an order generates a food-sale commission, and therefore an allegedly infringing photograph generated revenue. That is the theoretical general benefit the Court already rejected, not a plausible direct financial interest. Count II fails on this independent ground.

**D. The SAC Still Does Not Plausibly Plead the § 411(a) Foreign-Works Exception**

This Court dismissed the foreign-works claims because the Complaint lacked any factual content about first publication. ECF No. 34 at 19-20. The Court granted leave to amend solely to cure that deficiency. Plaintiffs admit that they must plead facts establishing the method, extent, and purpose of the alleged first distribution; that the distribution was in fact the first publication; and that its geographic extent takes the work outside the statutory definition of a United States work. ECF No. 64 at 9-10 (citing *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1304–05 (11th Cir. 2012)). Plaintiffs failed to do so in the SAC.

Plaintiffs misrepresent what Exhibit 2 contains. It supplies URLs and upload dates—not countries of first publication or facts about the method, audience, extent, or purpose of any first publication. A photographer's nationality does not establish the place of first publication. Nor does a URL, without facts about how or to whom a work was made available, establish foreign first publication. Plaintiffs therefore have not pleaded the very facts the Court authorized them to add.

And to the extent the listed public webpages were publications, *Kernel Records* provides that simultaneous worldwide availability of a public website may be presumed; the SAC pleads no geo-blocking, geographic restriction, or other fact avoiding availability in the United States. The SAC instead offers labels and conclusions, not the required facts.

Plaintiffs attempt to recast the "Unpublished" entries as a mere ambiguity. ECF No. 64 at 10. But the labels are not ambiguous—they are affirmative representations in Plaintiffs' own exhibit that directly contract the operative allegations in paragraph 33 that each unregistered Photograph "was first published." The Court is not required to ignore a complaint's own exhibits or resolve that contradiction in Plaintiffs' favor. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) ("when exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern.") (cleaned up). If the public webpages are publications, Plaintiffs have not pleaded facts avoiding simultaneous U.S. availability; if they are not publications, Plaintiffs have not pleaded a coherent alternative explaining how the works were first published abroad or why the "Unpublished" designation is consistent with paragraph 33. Either way, the SAC does not plausibly plead the § 411(a) exemption. ECF No. 34 at 19–20. Plaintiffs are thus caught in an irreconcilable dilemma of their own making; their exhibit either contradicts their operative allegation or fails to supply the facts their allegation requires.

### E. Plaintiffs' Request for Statutory Damages and Attorneys' Fees Should Be Stricken

It is undisputed that § 412 bars statutory damages and attorneys' fees for unregistered works. Plaintiffs' efforts to defer the issue to work-by-work discovery fail because the SAC itself identifies which Photographs lack registration. There is no factual question to develop through discovery on that point: the works are either registered or they are not. Deferring the issue would burden the parties with unnecessary discovery costs concerning remedies the statute forecloses.

For any work the SAC identifies as unregistered, the requested remedies are unavailable as pleaded. Striking those demands now narrows discovery and streamlines case management—precisely the purpose of Rule 12(f)—rather than allowing discovery into remedies the Copyright Act does not permit.

## III. CONCLUSION

Uber therefore respectfully requests that the Court: (1) dismiss with prejudice Count Two (vicarious infringement) for failure to state a claim; (2) dismiss all claims relating to works for which Plaintiffs fail to plead a registration or facts establishing exemption from the pre-suit registration requirement; and (3) strike Plaintiffs' demands for statutory damages and attorneys' fees for any unregistered works. This is Plaintiffs' third pleading. The Court has twice identified the deficiencies in their vicarious infringement claim, granted leave to amend, and has been presented with substantially the same allegations each time. Plaintiffs have exhausted their opportunities, and further amendment would be futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004).

Dated: September 15, 2026

Respectfully submitted,

*/s/ Ana M. Barton*
Ana M. Barton, Florida Bar No. 85721
Reed Smith LLP
200 South Biscayne Boulevard, Suite 2600
Miami, FL 33131
Tel: +1 786 747 0200
Fax: +1 786 747 0299
Email: abarton@reedsmith.com

Christopher J. Pulido (Pro Hac Vice)
Reed Smith LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Tel: +1 415 543 8700

*Counsel for Defendant Uber Technologies, Inc.*