**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-24834-BLOOM/Elfenbein**

SHOIAB AHMED, MARINA HELENE ASCHABER, CHARLIE BARD, SARAH BARNES, KATHLEEN BERGET, HELEN BEST-SHAW, JULIA VERA FOERSTER, DANNY GHITIS, BENJAMIN GORGES, MEGGAN HILL, DENNIS LITTLEY, LAZY CAT ENTERPRISES LTD., MICHELLE MINNAAR, FLORIAN NOUH, JUDY L. PURCELL, RENEE ROBLEY SMITH, HEATHER SZUTKA, SARAH TRENALONE, MARCO VERCH, CANDICE WALKER, CHRISTINA CONTE WARTINBEE, and WENDIE WILLIAMS,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC.,

Defendant.

____________________________________/

**ORDER ON PARTIAL MOTION TO DISMISS AND STRIKE**

**THIS CAUSE** is before the Court upon Defendant Uber Technologies, Inc.'s ("Defendant") Partial Motion to Dismiss and Strike Second Amended Complaint, ECF No. [58] ("Motion"). Plaintiffs filed a Response in Opposition, ECF No. [64], to which Defendant filed a Reply, ECF No. [65]. The Court has reviewed Defendant's Motion, the briefs in support and opposition, the record, and is otherwise advised of the premises. For the reasons that follow, Defendant's Motion is granted in part and denied in part.

## I. FACTUAL BACKGROUND

Plaintiffs are professional photographers ("Photographers") whose photographic works were uploaded onto Defendant's servers and platforms. In their Second Amended Complaint, ECF

No. [53], the Photographers assert claims of Direct Copyright Infringement and Vicarious Copyright Infringement. Each Plaintiff is an owner of one or more of the copyright protected photographs (the "Photographs"). *Id.* ¶ 26. Furthermore, each Photographer "is the author, copyright holder, or exclusive licensee of one or more of the Photographs." *Id.* ¶ 29. As a result of its perspective, orientation, positioning, lighting, and other details, each of the Photographs "is entirely original and creative." *Id.* ¶ 30. The Photographs are works of authorship protected under the Federal Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.* (the "Copyright Act"). *Id.* ¶ 31.

None of the Photographers transferred ownership of copyright in the Photographs to any other person or entity, nor did the Photographers grant a license to Defendant to use the Photographs for any purpose. *Id.* ¶¶ 34, 35. Notwithstanding this, Defendant "copied, displayed, distributed and created derivative works of the Photographs on pages of the Defendant's website (the "Website")." *Id.* ¶ 36. Without license or authorization, Defendant accessed the Photographs, reproduced copies of the Photographs on its server, and displayed copies of the Photographs publicly on Defendant's Website. *Id.* ¶¶ 38, 39. Defendant further "displayed the Photographs internally to its employees, independent contractors, customers and vendors." *Id.* ¶ 40. After copying the Photographs, Defendant "made further copies and distributed the images on the internet to promote the sale of goods and services as part of Defendant's business." *Id.* ¶ 41. Defendant "copied and distributed the Photographs for purposes of advertising and promoting Defendant's business, and in the course and scope of advertising and selling its products and services." *Id.* ¶ 42.

Defendant operates the Uber Eats platform "as a curated commercial marketplace in which food photographs are an integral, revenue-generating component of the service." *Id.* ¶ 44. That is,

unlike "passive content hosts," Defendant "does not permit merchant-uploaded photographs to appear on the platform without internal review and approval." *Id.* Defendant's published guidelines for merchant-submitted photographs require merchants to represent and warrant that they have usage rights and that the upload does not violate any third-party rights. *Id*. Defendant "reserves and exercises the right to review, approve, reject, or remove any merchant-submitted or user-submitted photograph before or after it is displayed on the platform." *Id*. Pursuant to Defendant's pre-display review process, Defendant's employees and agents review each merchant- and user-submitted photograph before it appears on the Uber Eats platform. *Id*. ¶ 45. Defendant's merchant agreements grant Defendant the contractual right to "reject, remove, or modify any uploaded photograph at any time, for any reason." *Id.* ¶ 46.

Defendant's published data "establishes a direct, quantified causal relationship between the display of food photographs and [Defendant]'s commission revenue." *Id.* ¶ 47. Specifically, restaurants displaying a relevant dish image "saw up to 20% more clicks and up to 32% more orders" compared to listings not bearing photographs. *Id*. Because of the way Defendant's service fee structure calculates its commission, each additional order generates additional commission to Defendant. *Id*. The Photographs, Plaintiffs allege, "were displayed on [Defendant]'s platform for the commercial purpose of driving customer orders, and each order produced direct commission income to [Defendant]." *Id*.

On October 21, 2025, Plaintiffs filed their first Complaint, asserting three causes of action against Defendant, all arising under 17 U.S.C. § 501 *et seq.*: (1) Direct Copyright Infringement; (2) Vicarious Copyright Infringement; and (3) Contributory Copyright Infringement. ECF No. [1] at 10–12. On December 12, 2025, Defendant filed its first Motion to Dismiss. ECF No. [15]. On April 26, 2026, the Court granted the first Motion to Dismiss in part and denied it in part. ECF No.

[34]. Specifically, the Court dismissed Counts II and III and dismissed claims related to purported "foreign works" for which no place of publication was alleged. *See generally id*. The Court granted Plaintiffs leave to amend to plead the place of first publication for foreign works. *Id.* at 24.

In May 2026, Plaintiffs moved for reconsideration. ECF No. [38]. Ultimately, the Court granted that request in part and denied it in part. ECF No. [52]. The Court found that it had erred in its futility analysis and granted Plaintiffs leave to amend their vicarious liability claim. *Id.* at 6.

In August 2026, Plaintiffs filed their Second Amended Complaint, asserting two causes of action against Defendant, both arising under 17 U.S.C. § 501 *et seq.*: (1) Direct Copyright Infringement, and (2) Vicarious Copyright Infringement. ECF No. [53]. Defendant then filed the instant Motion, arguing that the Court should dismiss Count II with prejudice, dismiss all claims to the extent they are based on unregistered works for which the Second Amended Complaint pleads neither a copyright registration nor facts bringing the work within the 17 U.S.C. § 411(a) exception, and strike Plaintiffs' request for statutory damages and attorneys' fees to the extent they concern unregistered works. ECF No. [58]. Plaintiffs respond that Count II sufficiently pleads the elements of vicarious copyright infringement, the Second Amended Complaint provides the work-specific country and publication-date information needed at the pleading stage, and Defendant's request to strike statutory damages and attorneys' fees is premature. ECF No. [64]. Defendant replies that the Second Amended Complaint does not plead the predicate infringement required to support a vicarious liability claim, does not plausibly plead a practical ability to supervise the alleged copyright infringement, fails to plead direct financial interest, does not plausibly plead the § 411(a) foreign works exemption, and does not contain a basis for statutory damages or attorneys' fees for unregistered works. ECF No. [65].

## II. LEGAL STANDARD

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir.

2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted). In considering a motion to dismiss, the court is generally limited to the facts contained in the complaint and attached exhibits. *See Thaeter*, 449 F.3d at 1352. However, pursuant to the incorporation by reference doctrine, "a district court may consider evidence attached to a motion to dismiss without converting the motion into a motion for summary judgment 'if the document is (1) central to the plaintiff's claim; and (2) undisputed, meaning that its authenticity is not challenged.'" *Swinford v. Santos*, 121 F.4th 179, 187 (11th Cir. 2024) (quoting *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024)).

Pursuant to Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "[A] motion to strike is the appropriate mechanism to pursue removal of the prayer for damages in the Complaint." *Pucci v. Carnival Corp.*, 160 F. Supp. 3d 1329, 1331 (S.D. Fla. 2016). "Under Rule 12(f), a motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Laferte v. Murphy Painters, Inc.*, No. 17-CIV-60376, 2017 WL 2537259, at *1 (S.D. Fla. June 12, 2017) (collecting cases). Thus, despite the Court's broad discretion, a motion to strike is considered a drastic remedy and is often disfavored. *Id.*

## III. DISCUSSION

### A. Vicarious Copyright Infringement

Defendant's first argument is that Plaintiffs' Vicarious Copyright Infringement claim still fails to state a claim for three reasons: (1) it does not plead the predicate infringement required for

a vicarious copyright infringement claim, (2) it does not plead practical supervisory control, and (3) it does not plead a direct financial interest in the infringing activity. ECF No. [58] at 5–9. Plaintiffs respond that the Second Amended Complaint adequately pleads a predicate infringement by an actor other than Defendant, plausibly alleges a practical ability to supervise via Defendant's mandatory pre-publication review, and plausibly alleges a direct financial interest. ECF No. [64] at 5–9. Defendant's Reply reiterates its earlier arguments. ECF No. [65].

As a general matter, to state a claim for direct copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008). To state a claim for vicarious infringement, therefore, a plaintiff must allege "direct infringement by a third party." *See Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016).

From there, a plaintiff must allege that a defendant has (1) the "right and ability to supervise the [third party's] infringing activity" and (2) "a direct financial interest [in the third party's infringing activity]." *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1214 (S.D. Fla. 2021) (citation omitted), *amended in part on reconsideration*, No. 21-20862, 2022 WL 845468 (S.D. Fla. Mar. 22, 2022); *see also Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987). So long as these two elements are alleged, vicarious infringement can be shown "'even if the defendant initially lacks knowledge of the infringement.'" *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 n.9 (2005)). Whether the direct infringer is an employee or an independent contractor is irrelevant to the vicarious liability inquiry. *S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985) (imposing vicarious

liability for an independent contractor's copyright infringement); *see also UMG Recordings, Inc. v. Bright House Networks, LLC*, No. 19-CV-710, 2020 WL 3957675, at *3 (M.D. Fla. July 8, 2020) ("The doctrine [of vicarious infringement] subsequently expanded to cover independent-contractor relationships as well.").

**i. Predicate Infringement**

Defendant's first argument is that, in Count II, Plaintiffs attribute the infringing conduct to Defendant's "employees or agents" and, alternatively, to merchants or other third parties "to the extent" they uploaded a Photograph. ECF No. [58] at 6. In this sense, the Second Amended Complaint fails to identify the direct infringer, and "[a] conditional reference to an unnamed actor cannot satisfy the predicate-infringement requirement." *Id.* at 6–7.

Plaintiffs respond that they need not plead a specific employee, merchant, or agent who uploaded a specific Photograph. ECF No. [64] at 6. Without discovery, Plaintiffs cannot know who specifically committed the infringement, and that level of specificity is not a pleading requirement. *Id*.

Defendant replies that the Second Amended Complaint fails to identify any individual, employee, merchant, or specific act of copying. ECF No. [65] at 1–2. Plaintiffs' concession that they "cannot yet know" who uploaded each image without discovery is an admission that the Second Amended Complaint lacks the required factual predicate, as it does not plead facts "permitting reasonable inference that a person or entity other than [Defendant] committed the predicate infringement." *Id.* at 2.

The Court agrees with Plaintiffs and does not find that dismissal is warranted on this basis. The Second Amended Complaint provides specific factual bases for inferring that the predicate infringement was committed by Defendant's employees or agents and that, in the alternative, it

was committed by merchants. Beginning with employees and agents, the Second Amended Complaint plainly states that Defendant's "employees or agents acting within the scope of their employment or agency reproduced, displayed, and distributed the Photographs[.]" ECF No. [53] ¶ 60. That is a sufficient allegation of predicate infringement by Defendant's employees or agents. It "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," which in this case is that Defendant's employees or agents committed predicate infringement. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Turning to allegations regarding merchants, the Court again finds the Second Amended Complaint sufficient. Plaintiffs' most specific allegation is as follows: "Alternatively, to the extent any of the Photographs were uploaded to the Uber Eats platform by merchants or other third parties rather than by [Defendant]'s own employees and agents, [Defendant] is vicariously liable for such infringement[.]" ECF No. [53] ¶ 64. The implication is clear: Plaintiffs are alleging that, in the alternative to employees or agents, *merchants* committed the requisite predicate infringement. The Second Amended Complaint is replete with allegations of Defendant's "pre-display" review of "merchant-submitted photograph[s]," *id.* ¶¶ 44, 65, which further clarify precisely how the alleged direct infringement by merchants occurred. Defendant is plainly on notice of the scope, nature, and grounds for Plaintiffs' claims.

The Court finds the case of *Chemaly v. Lampert* instructive. 174 F.4th 843 (11th Cir. 2026). There, plaintiff "pled in the alternative that if, in fact, [Defendant One] was not his Jones Act employer, then [Defendant Two] was his Jones Act employer." *Id.* at 857. In a concurrence, Judge Hull described "[t]hat alternative pleading [as] permissible." *Id.* at 862 (Hull, J., concurring). The plaintiff was permitted to plead that if one party was not liable, another party was responsible.

Plaintiffs here engage in the same alternative pleading style, and the Court finds it permissible and adequate to place Defendant on notice of the nature of the claim against it.

**ii. Supervision and Control**

Defendant next argues that the Second Amended Complaint does not plead practical control, insofar as it does not allege what the pre-display "review examines, that [Defendant] compares each submission against third-party works, that [Defendant] has access to ownership or license information, or that [Defendant] has a workable process for determining whether a photograph was copied." ECF No. [58] at 7. Plaintiffs respond that they need only allege whether Defendant "has a legal right to stop or limit the infringing conduct and a practical ability to police it — not whether [Defendant] operates a functioning copyright-detection algorithm." ECF No. [64] at 7. Defendant replies that "general content moderation to enforce platform guidelines—such as aesthetics and formatting—and the practical ability to identify, supervise, and stop copyright infringement" are different capabilities, and Plaintiffs do not plausibly allege the latter. ECF No. [65] at 3.

In the vicarious copyright infringement context, "[i]t is not required that the defendant actually exercised its right to supervise the work." *Oppenheimer v. MiJoy Indus. Servs., Inc.*, No. 1:22-CV-04776-JPB, 2025 WL 2995125, at *6 (N.D. Ga. Mar. 13, 2025). Instead, a plaintiff need only allege that the defendant had "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Venus Fashions, Inc. v. ContextLogic, Inc.*, No. 16-CV-907, 2017 WL 2901695, at *12 (M.D. Fla. Jan. 17, 2017). The fundamental requirement is that the plaintiff allege that the defendant has a "practical ability to police the infringing activities of [third parties] as opposed to suggesting measures that are imprecise, overbroad or not workable." *Id.* (internal quotation marks and citation omitted).

For example, in *Klein & Heuchan, Inc. v. Costar Realty Information, Inc.*, the court found the supervision and control element satisfied where a real estate agency provided the direct infringer (who was an independent contractor) with "office space, held weekly sales meetings, controlled his listings, and in general exercised supervisory control." 707 F. Supp. 2d 1287, 1297 (M.D. Fla. 2010), *aff'd*, 425 F. App'x 833 (11th Cir. 2011). Similarly, in *Coach Inc. v. Kim's Management*, *Inc.*, the court found that the right to inspect vendors' merchandise and to remove vendors satisfied the "right and ability to control" element. No. 1:10-CV-02746-JJOF, 2012 WL 13001933, at *11 (N.D. Ga. Feb. 28, 2012). Specifically, the court found the practical ability present even if the defendant did not have "the ability to identify exactly which Coach items had copyrighted designs on them[.]" *Id.*

By contrast, in *Millennium Funding, Inc.*, the court found that where the operative complaint did not allege that the defendant could "terminate the account of end users who infringe on Plaintiffs' copyrights" but instead merely alleged that the defendant could terminate the accounts of *subscribers*, the complaint failed to state a claim. 576 F. Supp. 3d at 1215. Because of the inability to directly reach infringers, the plaintiffs' proposed control mechanism was an "impermissibly broad measure." *Id.*

Here, the Second Amended Complaint plausibly alleges the right and ability to supervise and control infringement. Plaintiffs allege that Defendant "reserves and exercises the right to review, approve, reject, or remove any merchant-submitted or user-submitted photograph before or after it is displayed on the platform." ECF No. [53] ¶ 44. Under this review process, Defendant's "employees and agents conduct pre-display review of each merchant-submitted photograph and each user-submitted photograph before it appears on the Uber Eats platform." *Id.* ¶ 45. Furthermore, Defendant's merchant agreements grant Defendant "the contractual right to reject,

remove, or modify any uploaded photograph at any time, for any reason." *Id.* ¶ 46. The Court finds that these allegations plausibly support a finding that Defendant had the legal right and practical ability to assess the copyright status of photographs and prevent the display of infringing photographs.

Indeed, the case of *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009), is instructive. There, defendants operated online bulletin boards from which subscribers could download copyrighted sound recordings. *Id.* at 130–31. The court found sufficient evidence of the right to control, noting that the defendants (1) had a policy that prohibited the sharing of copyrighted content; (2) maintained computer servers that stored and transmitted user-originated content; (3) had the ability to filter or block content, including infringing content; and (4) "at times, exercised their right and ability to restrict, suspend, or terminate subscribers." *Id.* at 131, 157. Here, Defendant's capabilities, as alleged in the Second Amended Complaint are analogous. Thus, the Court finds the allegations concerning mechanisms of supervision and control adequate and declines to dismiss Count II on this ground.

**iii. Direct Financial Interest**

Defendant next argues that the Second Amended Complaint does not plead a direct financial interest in the infringing activity. ECF No. [58] at 8. Specifically, Plaintiffs do not allege that an unauthorized image uniquely generated sales; instead, Plaintiffs generally allege that images, including lawful ones, drive sales. *Id.* at 9. Plaintiffs respond that they plausibly plead that photographs, including infringing photographs, drive sales; at the pleading stage, they need not point to specific sales driven by specific infringing Photographs. ECF No. [64] at 8–9. Defendant replies that Plaintiffs' "statistic concerns *photographs generally*—any photograph of food—not the specific copyrighted Photographs at issue." ECF No. [65] at 5. If a lawful photograph would

generate the same lift, it means that the direct financial benefit does not flow from the use of a copyrighted photograph. *Id.* at 6.

The Court agrees with Plaintiffs. As a general matter, a plaintiff asserting a vicarious copyright infringement claim must allege that "there is a causal relationship between the infringing activity and any financial benefit a defendant reaps[.]" *Klein & Heuchan, Inc.*, 707 F. Supp. 2d at 1299 (citation omitted). Courts routinely reject the argument that a plaintiff must tie a financial benefit to specifically infringing sales separated out from non-infringing sales. *See, e.g.*, *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996); *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 231 (4th Cir. 2024), *rev'd and remanded on other grounds*, 607 U.S. 583, 146 S. Ct. 959, 224 L. Ed. 2d 411 (2026) ("[A] defendant may possess a financial interest in a third party's infringement of copyrighted music even absent a strict correlation between each act of infringement and an added penny of profits."). For example, in *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 308 (2d Cir. 1963), the defendant received a certain percentage of the sales price of every record sold—"whether 'bootleg' or legitimate[.]" The Second Circuit found that this was sufficient to find an "obvious and direct financial interest in the exploitation of copyrighted materials[.]" *Id.* at 307.

Within this circuit, the Court finds *Coach, Inc. v. Swap Shop, Inc.* instructive. 916 F. Supp. 2d 1271 (S.D. Fla. 2012). There, the defendants were co-operators of a flea market at which infringing goods were sold. *Id.* at 1274–75. The court found that the plaintiff had plausibly alleged a direct financial interest because the defendants "receive rents from their vendors, including those selling fake Coach products, along with parking and concession fees, which are fueled in large part by the draw created by the widespread availability of fake Coach products at the Flea Market." *Id.* at 1282. The court did not consider whether genuine Coach products would have driven the same

number of sales as counterfeit products, nor was it a source of concern that the defendants' financial benefit stemmed from both infringing sales and non-infringing sales. What matters is that the infringing products do, in fact, create a draw. *Id*.

Here, the Court finds the "crux of the financial benefit inquiry" satisfied. As alleged, "copyright infringement draws customers to the defendant's service," and it results in a "direct[]" benefit flowing to Defendant. *Cox Commc'ns, Inc.*, 93 F.4th at 231 (citations omitted). Specifically, as alleged, when a Photograph is posted on the Uber Eats platform, it becomes more likely that a customer will complete a purchase, and Defendant's fee structure means that it earns more when more purchases are completed. ECF No. [53] ¶ 47. Just as a dance hall playing copyrighted music makes money not from the music itself but from attendance and associated sales—but the benefit is nonetheless direct—so, too, is the benefit alleged here direct. *Klein & Heuchan, Inc.*, 707 F. Supp. 2d at 1298 (citing *Major Bob Music v. Stubbs*, 851 F. Supp. 475 (S.D. Ga. 1994)). At this stage, Plaintiffs' allegations are sufficient.

**B. "Foreign Works" Exemption**

Defendant next argues that Plaintiffs fail to plead that the foreign works exemption applies, as the Second Amended Complaint—particularly Exhibit 2, which identifies allegedly foreign works—does not identify the countries of first publication; does not allege the "method, audience, extent, or purpose of the alleged first publication;" and lists certain works as being "Unpublished." ECF No. [58] at 10–11. Plaintiffs respond that the allegations, construed in Plaintiffs' favor, plausibly allege first publication abroad preceding any United States publication. ECF No. [64] at 9–10. Moreover, the "Unpublished" label is a mere "ambiguity" that should not control over the Second Amended Complaint's "operative factual allegation." *Id.* at 10. Defendant replies that the Second Amended Complaint does not plead countries of first publication or facts about the first

publication. ECF No. [65] at 7. At most, it implicates the presumption of simultaneous worldwide availability. *Id.* at 7–8. Moreover, Plaintiffs themselves list certain works as "Unpublished," which undermines a finding that these qualify as foreign works. *Id.* at 8.

As a precondition to enforcement, the Copyright Act generally requires that copyright holders of United States works register those works before bringing an infringement action. 17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) (citing section 411(a)). By contrast, owners of "foreign works" need not register their works before instituting an infringement action. *Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1302 (11th Cir. 2012). The Eleventh Circuit has indicated as follows:

> [T]o proceed with a copyright infringement action, a plaintiff that claims his published work is exempt from the registration requirement must prove that the first publication occurred abroad. This requires the plaintiff to first prove a publication: that the method, extent, and purpose of the distribution meets the Copyright Act's requirements for publication. Once the plaintiff has proven publication, he must then prove that the publication was, in fact, the first publication, and that the geographic extent of this first publication diverges from the statutory definition of a "United States work."

*Id.* at 1304–1305. Alternatively, unpublished works can receive copyright protection so long as none of their authors is a United States national, domiciliary, or habitual resident. 17 U.S.C. § 101.

The Court agrees with Defendant and finds that Plaintiff does not state a claim with respect to purported foreign works. As an initial matter, the Court notes that "[e]xhibits attached to the complaint are treated as part of the complaint for Rule 12(b)(6) purpose." *Mendoza v. Aetna Life Ins. Co.*, No. 23-13674, 2026 WL 775293, at *2 n.1 (11th Cir. Mar. 19, 2026) (citation omitted). The Court cannot ignore an exhibit because doing so would be beneficial to plaintiff. Thus, the Court fully considers the information contained in Exhibit 2. Moreover, it is well settled that courts need not accept factual allegations that are internally inconsistent. *Campos v. INS*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998); *Ellen S. v. Fla. Bd. of Bar Exam'rs*, 859 F. Supp. 1489, 1492 (S.D.

Fla. 1994) (noting that there "are a few exceptions to" the rule requiring courts to accept a complaint's allegations as true, "such as where the facts alleged are internally inconsistent").

Here, Exhibit 2 and the allegations regarding foreign works in the Second Amended Complaint are so inconsistent that the Court cannot deem the relevant allegations sufficient. For example, the Second Amended Complaint states that the "Initial Display Location" column will contain "the country where the Photograph was first uploaded[,]" ECF No. [53] ¶ 33, but that column contains website addresses, not countries, ECF No. [53-2].

More concerningly, the Court cannot reconcile the "Published/Unpublished" column—which purportedly details "whether the Photograph was published at the time of display on each platform," ECF No. [53] ¶ 33—with the allegations in the Second Amended Complaint. Specifically, paragraph 33 of the Second Amended Complaint contends that Exhibit 2 contains the country and date of first publication for each purportedly foreign Photograph. *Id.* But if the "Published/Unpublished" column is understood to refer to the Photograph being published or unpublished *prior* to its upload to the identified web address, then the web address and date of upload listed do not refer to the *initial* publication for those Photographs identified as already "Published." If the column is understood to refer to the Photograph being published or unpublished *upon* its upload to the respective web address, such that the Photographs labeled "Unpublished" remained unpublished after upload, then those Photographs are not accompanied by their initial publication place and time. In either case, the Exhibit is inconsistent with the Second Amended Complaint's allegation that each allegedly foreign Photograph was published "in the country and on the date identified in Exhibit 2[.]" ECF No. [53] ¶ 33.

To be clear, the Court is not swayed by Defendant's argument that because each purportedly foreign work is described as having an "Initial Display Location" that is a website, the presumption

of simultaneous worldwide availability is raised. ECF No. [58] at 11. Contrary to Defendant's assertion, Plaintiffs are not required to "prevent[]" that presumption at the motion to dismiss stage. *Id.*; *see also Beijing Meishe Network Tech. Co. v. TikTok Inc.*, No. 23-CV-06012-SI, 2024 WL 3522196, at *6 (N.D. Cal. July 23, 2024) ("Drawing all plausible inferences in favor of [the plaintiff], the Court cannot presume based on this authority that by distributing software applications derived from its source code to app stores in China for further distribution in China the software was simultaneously available in the United States."). Indeed, the Eleventh Circuit expressly "caution[ed] district courts against making presumptions such as this without careful consideration, especially without stipulations or supporting evidence." *Kernel Recs. Oy*, 694 F.3d at 1306 n.13. Instead, the Court is required to construe all reasonable inferences in Plaintiffs' favor, and it is plausible that some or all of the websites cited were not available in the United States at the time of first publication.

But the Court finds itself unable to reconcile the competing and contradictory information in Exhibit 2 and the body of the Second Amended Complaint. As such, Plaintiffs fail to state a claim with respect to purported foreign works, as Plaintiffs do not provide a coherent indication of first publication.

**C. Request for Statutory Damages and Attorneys' Fees**

Defendant's final argument is that for unregistered works, including foreign works, statutory damages and attorneys' fees are unavailable, so Plaintiffs' demand for both should be stricken. ECF No. [58] at 11. Plaintiffs respond that the availability of statutory damages and attorneys' fees depends on facts that have not yet been developed through discovery. ECF No. [64] at 11–12. Defendant replies that no discovery is required to determine whether or not a Photograph

is registered. ECF No. [65] at 8. Therefore, for any Photograph the Second Amended Complaint identifies as unregistered, the Court should strike the requested remedies. *Id.* at 9.

Pursuant to 17 U.S.C. § 412, only owners of registered works may collect statutory damages and attorneys' fees. Courts that have assessed the issue have determined that § 412 precludes unregistered foreign works from seeking statutory damages or attorneys' fees. *See, e.g.*, *The Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 633 F. Supp. 2d 159, 162 (S.D.N.Y. 2009) ("Section 412 has no exception excusing foreign works from its mandate: it requires registration to obtain statutory damages for both domestic and foreign works." (citations omitted)); *Parry v. URBN US Retail LLC*, 809 F. Supp. 3d 255, 270 (E.D. Pa. 2025) ("A review of the legislative history reveals that Congress intended Section 412 to be applicable to 'works of foreign and domestic [origin] alike.'" (citations omitted)); *Super Express USA Publ'g Corp. v. Spring Publ'g Corp.*, No. 13-CV-2814 (DLI)(JO), 2018 WL 1559764, at *3 (E.D.N.Y. Mar. 30, 2018) ("[U]nregistered foreign copyright holders can bring infringement claims, but they may only seek actual damages." (citations omitted)).

The Court will not strike Plaintiffs' requests for statutory damages or attorneys' fees. It is true that "if a party pleads a remedy (like punitive damages or non-pecuniary damages) that [is] expressly barred as a matter of law, an Order striking such claims for relief is warranted." *Webb v. Carnival Corp.*, No. 15-24230-CIV, 2016 WL 11707679, at *1 (S.D. Fla. Aug. 3, 2016) (citation omitted). But "[s]triking allegations from a pleading . . . 'is a drastic remedy to be resorted to only when required for the purposes of justice' and only when the stricken allegations have 'no possible relation to the controversy.'" *SEC v. Walker*, No. 20-62564, 2021 WL 5088854, at *1 (S.D. Fla. Aug. 16, 2021) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)).

Plaintiffs' request for statutory damages is expressly limited to those Photographs for which "the registration status . . . qualifies [the Photographs] for an award of statutory damages." ECF No. [53] at 15. In this regard, the request builds in the very limitation Defendant seeks to have the Court enforce. And as the Court has already dismissed the unregistered and allegedly foreign works, all that remains are registered United States works for which the requested forms of relief are plausibly available. Considering this, the Court finds that striking the prayer for relief is unwarranted.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion, **ECF No. [58]**, is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' claims regarding purportedly foreign works are dismissed.
2. Defendant shall file its Answer to the Second Amended Complaint by **November 13, 2026**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 30, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record